Andrew W. Caine (CA Bar No. 110345)
Jeffrey P. Nolan (CA Bar No. 158923)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
Email: acaine@pszjlaw.com

Attorneys for Defendant,
Shaman Baskhi

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

In re:

SHAMAN BAKSHI

                Debtors

STEPHEN CHEIKES, an individual; and THE STORYTELLERS GROUP ENTERPRISES CO., a Canadian corporation,

                Plaintiffs,

       v.

SHAMAN BAKSHI,

                Defendant.

Case No.: 2:18-BK-14672

Adv. No.: 2:18-ap-01235-VZ

MOTION OF DEFENDANT SHAMAN BAKSHI FOR ORDER QUASHING SUBPOENAS AND/OR FOR ENTRY OF A PROTECTIVE ORDER AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

[Declaration of Jeffrey P. Nolan filed concurrently herewith]

Hearing Date:
Date:  March 28, 2019
Time:  11.00 a.m.
Court:  Courtroom 1638
       Roybal Federal Building
       255 E. Temple Street
       Los Angeles, CA 90012

1  **TO THE UNITED STATES BANKRUPTCY COURT FOR THE CENTRAL DISTRICT OF**

2  **CALIFORNIA, STEPHEN CHEIKES AND HIS COUNSEL OF RECORD, JP MORGAN**

3  **CHASE AND GOOGLE, INC.:**

4      Defendant, Shaman Bakshi (the "Defendant") hereby moves for entry of an order under Rule

5  45 of the Federal Rules of Civil Procedure quashing *Subpoenas* (collectively, the "Subpoenas")

6  issued in this district by Plaintiff, Stephen Cheikes (the "Plaintiff") to **JP Morgan Chase** and

7  **Google Inc.** and/or for the entry of a protective order under Rule 26(c) that such discovery not be

8  had.

9      The parties have met and conferred in good faith regarding the relief requested herein and the

10  matter is properly before the Court.

11                              **I.**

12                    **PRELIMINARY STATEMENT**

13      There can be no reasonable dispute that the initial subpoena issued to Google, Inc. seeking all

14  emails to and from Defendant's email account without regard to the subject-matter or party, was

15  absurdly overbroad.

16      There can be no reasonable dispute that the initial subpoena issued to JP Morgan Chase

17  seeking bank records of a financial institution for six years including all financial records [credit

18  card statements, home loans, educational accounts, etc.] without regard to subject-matter, is

19  overbroad and unreasonably burdens personal and privacy rights of the Defendant.

20      Since these subpoenas made no effort to conduct discovery on the issues raised in the

21  adversary complaint, both subpoenas were clearly not calculated to lead to admissible evidence in

22  the case and served solely for the purposes of harassment and oppression.  Plaintiff has not been shy

23  about his intent to pursue, publically disgrace, and haunt the Defendant into the future given the

24  claimed misdeeds.[1]  Counsel for Defendant met and conferred with the Plaintiff to limit the scope of

25  the subpoenas, while respecting the Federal Rules of Civil Procedure to allow some measure of

26  leeway for discovery without waiving the right to subsequently challenge legal claims or the

27

28

---

[1]  Plaintiff has issued multiple emails stating his intent to publically humiliate the Defendant, and make Defendants life as unpleasant as possible.  (See E-mails issued by Stephen Cheikes, attached to the Decl. of J. Nolan filed concurrently herewith as Ex. A)

1    introduction of evidence. Thereafter, an agreement was reached whereby Plaintiff would withdraw

2    and re-issue the subpoenas.

3        On January 15, 2019, Plaintiff issued a second set of subpoenas (the "Subpoenas").

4    However, the Subpoenas while restrained in some respects from its predecessors, do not accurately

5    reflect the parties' agreement and further continue to inappropriately compel sensitive financial

6    records and data for inappropriate purposes such as embarrassment and harassment of the Debtor.

7    The documents sought have no relevance or even argument of relevance in the present adversary.

8    Given discovery conducted to date and judicial admissions made in other federal courts as to the

9    present transaction, it is clear numerous charging allegations in the adversary complaint

10    ("Complaint") are inaccurate and the attempt to dig through Defendant's personal records improper.

11        Defendant respectfully requests the attached Motion to Quash be granted and Protective

12    Order issued by the Court quashing the subpoenas and/or limiting the scope of documents sought.

13    **II.**

14    **FACTUAL BACKGROUND**

15        The Complaint alleges that the Defendant/Debtor, Shaman Bakshi ("Defendant'), converted

16    €300,000 in investment funds allegedly deposited by Plaintiff into escrow "for his own personal

17    use"[2], and that Defendant executed a personal guarantee to indemnify the Plaintiff with no intention

18    or ability to honor the contract.

19        To date, escrow documents demonstrate that on or about March 9, 2011, €300,000 allegedly

20    deposited by Plaintiff[3] was distributed in its entirety to Sebastian Anthonysamy. Anthonysamy, the

21    apparent investor, directed the escrow company to distribute €80,000 to Creative Financial

22    Resources, Inc., €20,000 to Robert Francis and the remainder to himself. (See Pay Order Request,

23    attached to the Declaration of J. Nolan filed concurrently herewith as Ex. B)

24        As pled before this Court, Plaintiff alleges the Defendant committed conversion and larceny

25    by absconding with the €300,000 of funds deposited into escrow. To date, Plaintiff has refused to

26    identify the facts and evidence to support the numerous allegation in the Complaint that Defendant

27    
28    [2] Complaint, ¶¶14, 16, 17, 28, 38, 51, 59, 67, 68, 75, 83, 84.
[3] To date, Plaintiff has refused to produce bank records or documents to evidence he personally provided the €300,000
and was damaged, as opposed to his friends or business associate's funds utilized in the transaction.

3

1    converted the €300,000 for his own personal use. (See Defendant's Motion to Compel Discovery

2    Responses, filed concurrently herewith)

3       On or about December 21, 2018, Plaintiff served a Subpoena to **JP Morgan Chase Bank**

4    seeking financial records of the Defendant for all banking records of the Defendant from January 1,

5    2009 to January 1, 2015. The Subpoena demanded information for all accounts including but not

6    limited to ATM cards, credit cards, checking, savings, money market, loans or financing provided to

7    the Defendant. (See, Subpoena to JP Morgan Chase Bank, attached to the Decl. of J. Nolan filed

8    concurrently herewith, as Ex. C).

9       On or about December 21, 2018, Plaintiff served a Subpoena on **Google, Inc**. seeking email

10    records of the Plaintiff for all emails issued by the Defendant from January 1, 2009 through January

11    1, 2015. (See Subpoena to Google, Inc., attached to the Decl. of J. Nolan filed concurrently

12    herewith, as Ex. D). The Subpoena demanded all emails issued from or out of the email account of

13    Defendant regardless of the subject matter or recipient.

14       On January 9, 2019, Defendant issued a meet and confer letter with respect to each subpoena

15    requesting the subpoenas be limited in scope given the sensitive nature of the information sought,

16    and Defendant's right to financial privacy. (See Meet and Confer letters dated January 9, 2019,

17    attached to the Declaration of J. Nolan filed concurrently herewith, as Ex. E). The parties

18    subsequently met and conferred on January 11, 2019. (See Decl. of J. Nolan, §9, filed concurrently

19    herewith)

20       Ultimately, an agreement was reached wherein the subpoenas would be limited.

21    Understanding the Plaintiff was looking for evidence of the Defendant's receipt of the €300,000, and

22    while not agreeing to the relevance or the significance of the documents sought, Defendant agreed to

23    not object to the **JP Morgan Chase Subpoena** to the extent it was limited to monthly bank

24    statements for the years 2010, 2011, and 2012. To the extent there were descriptions for debits such

25    as In-Out Burger or other personal information, counsel for Defendant would receive the financial

26    records directly from the bank and redact the description in a copy(while maintaining the original),

27    but allow Plaintiff to see all credits/deposits which could arguably be claimed to be ill-gotten gains.

28    (See Correspondence dated January 15, 2019, attached to the Decl. of J. Nolan filed concurrently

herewith, as Ex. F)  Defendant agreed to not object to the subpoena issued to **Google, Inc.** to the extent the subpoena was restricted to emails between the parties or "players" to the alleged financial transaction, Wlodarczyk, Russell, Anthonysamy, and Francis.  (See Ex. F attached to the Decl. of J. Nolan filed concurrently herewith)  Defendant also sought to limit the time frame of emails sought, but the parties subsequently agreed to allow emails to the players from 2010 to 2015.

On or about January 25, 2019, Plaintiff served his second Subpoena to **JP Morgan Chase Bank** restricting the search to January 1, 2010 to January 1, 2012.  (See Second Subpoena to JP Morgan Chase Bank, attached to the Declaration of J. Nolan filed concurrently herewith, as Ex. G) However, the subpoena again sought all records related to the Bakshi Account which includes all documents related to all accounts including but not limited to ATM cards, credit cards, checking, savings, money market, loans and or financing provided to the Defendant by the financial institution.

On or about January 25, 2019, Plaintiff served a second Subpoena on **Google, Inc.** seeking email records of the Plaintiff for emails, with respect to the individuals and vendors who were "players" to the financial transaction in 2011.  (See Second Subpoena to Google, Inc., attached to the Decl. of J. Nolan filed concurrently herewith, as Ex. H)  The Subpoena identified the individuals agreed to in the meet and confer letter, but included a new group of individuals indisputably not involved in the 2011 financial transaction; namely Jon Orban, Kenneth Yufe, and Nathan Owens. Kenneth Yufe is Defendant's business colleague and the subpoenas sought all emails and communications to him without regard to the subject matter or time frame. (See Decl. of J. Nolan)

On February 14, 2019, Defendant met and conferred with Plaintiff on the second set of subpoenas.   On February 15, 2019, Defendant issued a further set of meet and confer letter to Plaintiff requesting the second set of subpoenas be limited in scope in conformance with the parties' agreement. (See Meet and Confer letters dated February 15, 2019, attached to the Decl. of J. Nolan filed concurrently herewith, as Ex I).

There has been no response to the February 15, 2019, meet and confer letter and the Second set of Subpoenas have not be withdrawn. (See Decl. of J. Nolan, ¶11)

# III.

# ARGUMENT

The Subpoenas needlessly seek the production of sensitive financial records of the Defendant containing personal information in an effort to humiliate, embarrass, and oppress the Defendant. Similarly, the effort to subpoena emails of Defendant's business colleague, Kenneth Yufe, which includes his current business dealings, seeks to ruin the ability of Defendant to make a living. (See Decl. of J. Nolan, ¶10)  Defendant at great cost, issued multiple letters seeking to limit the subpoenas.  Plaintiff has refused to abide by the consensual agreement reached and Defendant seeks to quash both subpoenas and or limit by protective order.

## A.    The Subpoenas Should be Quashed as Imposing an Undue Burden and Issued Without Good Cause

Rule 45(d)(3) of the Federal Rules of Civil Procedure provides in relevant part that "[o]n timely motion, the issuing court must quash or modify a subpoena that . . . . . . (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3).

Federal Rule 26(c)(1) provides, in relevant part:

> The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... [by] forbidding the disclosure or discovery....

Fed. R. Civ. P. 26(c)(1)(A).  Federal Rule 26(b)(2)(C) provides that the Court must limit discovery to the extent that:

> (i) the discovery sought is cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

Persons "may seek from the court protection from discovery via the overlapping and interrelated provisions of both Rules 26 and 45" because "moving to quash a subpoena, in essence, is the same as moving for a protective order that such discovery not be allowed." *Mannington Mills,*

1  | *Inc. v. Armstrong World Indus.*, 206 F.R.D. 525, 529 (D. Del. 2002)[4].

2  |        Fed. R. Civ. P. 26(c)(1).  The decision whether to enter a protective order lies within the

3  | court's discretion. See, e.g., *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000).  Undue burden is

4  | evaluated under both Rule 26 and Rule 45.  *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 683 (N.D.

5  | Cal. 2006).  [U]nder Rule 45(c)(3)(A), "[a]n evaluation of undue burden requires the court to weigh

6  | the burden to the subpoenaed party against the value of the information to the serving party[,]"

7  | [citation omitted] and, in particular, requires the court to consider: 'such factors as relevance, the

8  | need of the party for the documents, the breadth of the document request, the time period covered by

9  | it, the particularity with which the documents are described and the burden imposed.'" *Moon v. SCP*

10 | *Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (quoting *Travelers Indem. Co. v. Metro. Life Ins.*

11 | *Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005)).

12 |        Thus "[d]iscovery may be refused where the burden of the proposed discovery outweighs its

13 | likely benefits ... taking into account such factors as the needs of the case, the parties' resources, the

14 | importance of the issues at stake, and the role of proposed discovery in resolving those rules."

15 | *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 714 (1st Cir. 1998).

> Any information sought by means of a subpoena must be relevant to the claims and defenses in the underlying case. More precisely, the information sought must be "reasonably calculated to lead to admissible evidence." Rule 26(b). . . . Overbroad subpoenas seeking irrelevant information may be quashed or modified. *See, e.g., Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (quashing subpoena seeking the production of all purchasing information where the underlying contract dispute was limited to a particular geographic region)....

*Gonzales v. Google, Inc.*, 234 F.R.D. at 680.  "Although  Rule 45 does not expressly refer to lack of

'relevance' as a basis to quash or modify a subpoena, requiring a party to produce wholly irrelevant

documents would be an "undue burden." *Sotelo v. Old Republic Life Ins.*, No. C-05-02238 RS, 2006

---

[4] Former Rule 26(b) that predated December 1, 2015, provided a more liberal discovery standard of "relevant to the subject matter involved in the action" upon a showing of "good cause".  This standard has been replaced with the "proportionality factors" to balance relevance with costs and intrusiveness.  The factors include: importance of the issues at stake in the action", the amount in controversy, the parties relevant access to information, the parties resources, the importance of the discovery in resolving the issues, and whether the burden and expense of the proposed discovery outweighs it likely benefit. See O'Connell & Stevenson, RUTTER GROUP PRAC. GUIDE FEDERAL CIV. PRO. BEFORE TRIAL (the Rutter Group, 2018) §11:610 citing to the Advisory Comm. Notes to the 2015 Amendments to FRCP 26.

1  WL 2632563, at *2 (N.D. Cal. Sept. 13, 2006).  See also *Moon v. SCP Pool Corp.*, 232 F.R.D. at

2  637 ("courts have incorporated relevance as a factor when determining motions to quash a

3  subpoena.").

> Of course, "if the sought-after documents are not relevant, nor
> calculated to lead to the discovery of admissible evidence, then any
> burden whatsoever imposed would be by definition 'undue.' "
> *Compaq Computer Corp. v. Packard Bell Elec., Inc.*, 163 F.R.D. 329,
> 335–36 (N.D.Cal.1995). … Thus, a court determining the propriety of
> a subpoena balances the relevance of the discovery sought, the
> requesting party's need, and the potential hardship to the party subject
> to the subpoena.

9  *Dele Campo v. Kennedy*, 236 F.R.D. 454, 458 (N.D. Cal. 2006).

10      The document requests in the subpoena to JP Morgan Chase are absurdly overbroad seeking

11  the production of  Defendant's ATM cards, credit cards and statements, checking, savings, money

12  market, loans (home, car or education) and otherwise.  None of the aforementioned documents are

13  relevant, directly or indirectly, to any issue in the adversary.  During the meet and confer process,

14  counsel for Plaintiff remarked that Defendant may have received some of the €300,000. (See Decl.

15  of J. Nolan, ¶7)  However, to date Plaintiff has produced no evidence to support such a claim.  (Decl.

16  of J. Nolan, ¶7)  More compelling, Plaintiff testified on September 6, 2018, before the United States

17  Bankruptcy Court, Southern District,  Honorable Christopher B. Latham, that the €300,000 went by

18  agreement to Anthonysamy, not Defendant,  as a "processing cost" for him to facilitate the release of

19  the stand by letter of credit ("SBLC") (See Reporter's Transcript of Proceeding, pgs. 234-235,

20  attached to the Decl. of J. Nolan filed concurrently herewith as Ex. "J")  Plaintiff subsequently sued

21  Anthonysamy in 2017 for not performing under the escrow agreement.  With respect to Defendant,

22  as a matter of law, no cause of action for conversion can rest where an owner either expressly or

23  impliedly assents to or ratifies the taking of the property. See *Angus v. Transnational Auto. Group,*

24  *Inc.*, 2012 U.S. Dist. LEXIS 5033(C.D. Cal. 2012) citing to *Tavernier v. Maes*, 242 Cal.App.2d 532,

25  552, 51 Cal. Rptr. 575 (1966)  ("As to intentional invasions of the plaintiff's interests, his consent

26  negates the wrongful element of the defendant's act, and prevents the existence of a tort. 'The

27  absence of lawful consent,' said Mr. Justice Holmes, 'is part of the definition of an assault.' The same

28  is true of . . . conversion . . ." (citations omitted)). "[T]he law is well settled that there can be no

conversion where an owner either expressly or impliedly assents to or ratifies the taking, use or disposition of his property." Fremont, 523 F.3d at 914 (quoting Farrington, 59 Cal.App.2d at 474).

Plaintiff is judicially estopped from claiming the €300,000 was stolen or converted by Defendant when he testified clearly and unequivocally to a prior court that (a) he released the funds to Anthonysamy consensually. The documents from escrow confirm his testimony that funds were released by Plaintiff to Anthonysamy and who transferred some of the funds to third parties other than Defendant. Before this Court, Plaintiff casts Defendant as the villain who converted the funds. The doctrine of judicial estoppel protects the integrity of the judicial system by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." See *Graham v. Orozco*, 2012 U.S. Dist. LEXIS 69942, pg. 16-17 (C.D., 2012) citing to *New Hampshire v. Maine*, 532 U.S. 742, 749-50, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001). "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas.* Co., 270 F.3d 778, 782 (9th Cir. 2001) (citation omitted). Courts invoke judicial estoppel "not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings, and to protect against a litigant 'playing fast and loose' with the courts." Id. at 782. There can be no legitimate reason for the Plaintiff to demand detailed bank records of Defendant, deposits, expenses, loans, etc. when no claim for conversion can be made.

Even assuming arguendo the bank documents were relevant or important, the subpoena was fashioned in the most intrusive form to embarrass and or intimidate the Defendant by compiling the personal financial records of the Defendant. The Graham-Leach-Biley Act (GLBA) requires financial institutions to protect the security and confidentiality of their customers' nonpublic personal information. [15 USC §6801(a)] Financial institutions includes banks. [15 USC §6809(3)(A)][5] The Subpoena to JP Morgan Chase seeks to prod and publish the personal day to day

---

[5] Tax returns do not enjoy an absolute privilege from discovery. St. Regis Paper Co. v. United States, 368 U.S. 208, 219, 7 L. Ed. 2d 240, 82 S. Ct. 289 (1961); Trans World Airlines, Inc. v. Hughes, 29 F.R.D. 523 (S.D.N.Y. 1961), aff'd, 332 F.2d 602 (2d Cir. 1964), cert. dismissed, [**10] 380 U.S. 249, 85 S. Ct. 934, 13 L. Ed. 2d 818 (1965). Nevertheless, a public policy against unnecessary public disclosure arises from the need, if the tax laws are to function properly, to

1  activities of the Defendant.  The Subpoena to Google violates 18 USCA §2702(a) referenced as the

2  Stored Communications Act.  Once Plaintiff possesses Defendant's personal and private data, it can

3  be included in any court filing and published as a matter of public record.  (Most Courts recognize a

4  presumption of public access to court records based on common law first amendment (free press)

5  grounds. *Phillips ex. Rel. Estates of Byrd. v. General Motors Corp.* (9th Cir. 2002) 307 F3d. 1206,

6  1210.  Plaintiff has not been shy about his intent to publically humiliate embarrass, and harass the

7  Defendant.  (See E-mails attached to the Decl. of J. Nolan filed concurrently herewith as Ex. "A")

8  While the initial subpoena to Google, Inc. was subsequently limited, the Subpoena now seeks to

9  intrude into Defendant's recent and current business dealings with Mr. Yufe who has no relevance to

10  any issue in the 2011 financial transaction.  The Subpoena seeking emails unlimited as to time or

11  scope to Mr. Yufe is improper.  Plaintiff has produced through discovery e-mails from the 2010-

12  2012 time frame.  The subpoena to Google, Inc. should be limited to the frame of 2010-2013. Fed.

13  R. Civ. P. 26(c) authorizes the district court to issue any order which justice requires to protect a

14  party or person from annoyance, embarrassment, oppression, or undue burden.

## IV.

## CONCLUSION

17      **WHEREFORE**, for all the foregoing reasons, the Defendant respectfully request that the

18  Court enter an order quashing the Subpoenas and/or a protective order, or issue such other and

19  further relief as the Court deems appropriate.

20  Dated: February 22, 2019                        PACHULSKI STANG ZIEHL & JONES LLP

21

22                                        By    */s/ Jeffrey P. Nolan*
                                                Andrew W. Caine
23                                              Jeffrey P. Nolan

24                                              Attorneys for Defendant, Shaman Bakshi

25

26

27

28  encourage taxpayers to file complete and accurate returns. Premium Service Corp. v. Sperry & Hutchinson Co., (9th Cir.
1975) 511 F.2d 225, 229.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
   10100 Santa Monica Blvd, 13th Fl., Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled: **MOTION OF DEFENDANT SHAMAN BAKSHI FOR ORDER QUASHING SUBPOENAS AND/OR FOR ENTRY OF A PROTECTIVE ORDER AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1.    **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On *(date) February 22, 2019*, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Brad D Krasnoff (TR)   BDKTrustee@dgdk.com, bkrasnoff@ecf.epiqsystems.com;DanningGill@gmail.com
- Jeffrey P Nolan    jnolan@pszjlaw.com
- Amtoj S Randhawa    Amtoj.Randhawa@ndlf.com, audrey.evans@ndlf.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL:**
On September 17, 2018, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**
   (state method for each person or entity served):
Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on *(date)*
February 22, 2019, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**PERSONAL DELIVERY**
Honorable Vincent Zurzolo
United States Bankruptcy Court
255 E. Temple Street
Suite 1360/Courtroom 1368
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 22, 2019 | Rolanda Mori | */s/ Rolanda Mori* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |