Andrew W. Caine (CA Bar No. 110345)
Jeffrey P. Nolan (CA Bar No. 158923)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California  90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
Email:  acaine@pszjlaw.com
            jnolan@pszjlaw.com

Attorneys for Defendant, Shaman Bakshi

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>SHAMAN BAKSHI,<br><br>                    Defendants. | Case No.:  2:18-BK-14672-VZ |
| STEPHEN CHEIKES, an individual; and THE STORYTELLERS GROUP ENTERPRISES CO., a Canadian corporation,<br><br>                    Plaintiffs,<br><br>       v.<br><br>SHAMAN BAKSHI,<br><br>                    Defendant. | Adv. No.:  2:18-ap-01235-VZ<br><br>**Hearing:**<br>Date:  November 15-16, 2022<br>Time:  10:00 a.m.<br>Place:  255 E. Temple Street<br>        Courtroom 1368<br>        Los Angeles, CA  90012<br><br>Judge:  Vincent P. Zurzolo |

**PRETRIAL BRIEF OF DEFENDANT SHAMAN BAKSHI**

---

**Dated:**  November 8, 2022

Jeffrey P. Nolan (CA Bar No. 158923)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile:  310/201-0760

*Attorneys for Defendant, Shaman Bakshi*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. 1

II.  PRETRIAL BRIEF OF DEFENDANT SHAMAN BAKSHI

    A.  The Parties: .......................................................................................... 3

    B.  The Events: .......................................................................................... 4

    C.  Recoveries Against Others: ................................................................. 8

III. PROCEDURAL STATEMENT ........................................................................... 8

IV.  ARGUMENT ....................................................................................................... 9

    A.  Plaintiff Stephen Cheikes Lacks Standing to Pursue the Adversary in Federal Court as He Personally Was Not Injured ......................... 9

    B.  Legal Standard in Dischargeability of Debts ................................... 11

    C.  Two of the Six Claims for Misrepresentations Concerning Financial Ability to Pay Are Not Actionable Under §§523(a)(2) ..................... 11

    D.  The Remaining Miscellaneous Fraudulent Misrepresentations Identified In The Pre-Trial Stipulation For The First Claim For Relief ....... 12

    E.  The Alleged Misrepresentations as to Defendant's Financial Acumen, Work Experience, Familiarity with the Parties & Involvement in Similar Transactions Are Not Actionable ............................................ 13

    F.  Plaintiff's Claim He Relied On General Statements From Defendant And That He Was Insulated From Risk By A Guarantee In A Transaction He Admits Was Filled With Risks Is Not Justifiable Reliance Under California Law ........................................................................................... 14

    G.  Plaintiff Personally Sustained No Damages .................................... 16

    H.  Any Recovery Is Reduced By Damages Already Collected ............ 16

V.   DEFENDANTS AFFIRMATIVE DEFENSES .................................................. 18

    A.  Plaintiff Obtained the Default Judgment in State Court With Unclean Hands and Recites the Same Inaccuracies in the Non-Dischargeability Complaint Before This Court ............................................................. 18

        1.  Plaintiff's Misrepresentations in Acquiring the Default Judgment. ........... 18

    B.  The Alleged Bakshi Guarantee Is Unenforceable As At Its Purpose It Sought To Leave A Loss Greater Than the Deposit With a Financial Institution ............................................................................................. 20

C.      Plaintiff or CES, by Releasing Funds Outside the Terms of the Escrow,
or Agreeing to an Overly Complex Transaction Which Was Filled With
Inconsistencies Was the Proximate Cause of the Loss of Escrow Funds ...............21

VI.     Isues with Evidence ...........................................................................................23

A.      Application of the Adverse Inference Doctrine ......................................23

VII.    CONCLUSION .................................................................................................24

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA 345931 v8 05233.004

# TABLE OF AUTHORITIES

## Cases

*Agnew v. Parks*
  172 Cal. App. 2d 756, 343 P.2d 118 (Cal. App. 1959) .................................................. 16

*Allergia, Inc. v. Bouboulis*
  2017 U.S. Dist. LEXIS 90844 (S.D. Cal. 2017) ........................................................... 18

*B. Braun Med., Inc. v. Rogers*
  163 Fed. Appx. 500 (9th Cir, 2006) ............................................................................. 16

*Bank v. Pho (In re Pho)*
  2015 Bankr. LEXIS 3498, 35 (Bankr. N.D. Cal. 2015) ............................................... 11

*Beard v. Mighty Lift, Inc.*
  224 F. Supp. 3d 1131 (W.D. Wa. 2016) ....................................................................... 21

*Beaupied v. Chang (In re Chang)*
  163 F.3d 1138 (9th Cir. 1998) ..................................................................................... 11

*Berkovich v. Cal. Franchise Tax Bd. (In re Berkovich)*
  15 F.4th 997, 2021 U.S. App. LEXIS 30676 ............................................................... 11

*California Franchise Tax Bd. v. Jackson (In re Jackson)*
  184 F.3d 1046 (9th Cir. 1999) ..................................................................................... 11

*California v. IntelliGender, LLC*
  771 F.3d 1169 (9th Cir. 2014) ..................................................................................... 16

*Cansino v. Bank of America*
  224 Cal. App. 4th 1462, 169 Cal Rptr. 3d 619 (2014) ................................................. 13

*Christen v. Lee*
  113 Wn.2d 479, 780 P.2d 1307, 1321 (Wash. 1989) ................................................... 21

*Citik Ka Wah Bank Ltd. v Wong (In re Wong)*
  291 B.R. 266 (Bankr. S.D.N.Y 2003) .................................................................. 11, 14

*Deutsche Financial Services Corp. v. Osborne (In re Osborne)*
  257 B.R. 14 (Bankr. C.D. Cal. 2000) ........................................................................... 23

*Dickson, Carlson & Campillo v. Pole*
  83 Cal. App. 4th 436, 99 Cal. Rptr. 2d 678 (2000) ...................................................... 18

*Direct List Ltd. Liab. Co. v. Vistage Int'l, Inc.*
  No. 15cv2025-WQH-JLB, 2016 U.S. Dist. LEXIS 152830, at *11-12
  (S.D. Cal. Nov. 3, 2016) .......................................................................................... 9, 10

*EEOC v. Waffle House, Inc.*
  534 U.S. 279, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002) .............................................. 16

*Ellenburg v. Brockway, Inc.*
  763 F.2d 1091 (9th Cir. 1985) ..................................................................................... 18

*Gencarelli v. Twentieth Century Fox Film Corp.*
  2018 U.S. Dist LEXIS 5375, *10 (C.D. Cal. 2018) ..................................................... 21

*Gentry v. eBay, Inc., supra.*
  99 Cal.App.4th, 816 (Cal app. 4th 2002) ..................................................................... 13

*Ghomeshi v. Sabban (In re Sabban)*
  600 F.3d 1219 (9th Cir. 2010) ..................................................................................... 12

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

iii

*Global Eagle Entm't, Inc.*
2015 U.S. Dist. LEXIS 192159, 54 (C.D. Cal. 2015).................................................. 13

*Golden State Bottling Co. v. NLRB*
414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973) ................................................... 23

*Gonzales v. Albuquerque Tortilla Co. (In re Furrs Supermarkets, Inc.)*
2008 Bankr. LEXIS 946,*26 (Bankr. N.M. 2008)....................................................... 23

*Greenfield Mhp Assocs., L.P. v. Ametek, Inc.*
2018 U.S. Dist. LEXIS 23856, *39 (S.D. Cal. 2018) ................................................. 17

*Hartley v. State*,
103 Wn.2d 768, 698 P.2d 77 (Wash. 1985) ................................................................ 22

*Hernandez v. Atlantic Finance Co.*
105 Cal. App. 3d 65, 164 Cal. Rptr. 279 (1980) .......................................................... 9

*In re Anastas*
94 F.3d 1280 (9th Cir. 1996) ..................................................................................... 15

*In re Bruce*
2005 Bankr. LEXIS 3085, *45 (Bankr. Mon. 2005) .................................................. 23

*In re Kirsh*
973 F.2d 1454 (9th Cir. 1992) ................................................................................... 15

*In re Urban*
2014 Bankr. LEXIS 1669, at *35 (9th Cir. BAP) ...................................................... 15

*In re Younie*
211 B.R. 367 (9th Cir. B.A.P. 1997)....................................................................... 12, 14

*Klapp v. Landsman (In re Klapp)*
706 F.2d 998 (9th Cir. 1983) ..................................................................................... 11

*Kruse v. Bank of America*
202 Cal. App. 3d 38, 248 Cal. Rptr. 217 (1988).................................................... 15, 16

*Krusi v. Bear, Stearns & Co.*
192 Cal. Rptr. 793 (Ct. App. 1983) ........................................................................... 17

*Levi Strauss & Co. v. Shilon*
121 F.3d 1309 (9th Cir. 1997) ................................................................................... 18

*Mendoza v. Ruesga*
169 Cal. App. 4th 270, 86 Cal. Rptr. 3d 610 (2008).................................................. 18

*Mukherjee v. Sir (In re Sir)*
2010 Bankr. Lexis 1800, 35 (Bankr. ND. Cal., 2010) ............................................... 20

*Municipal Court v. Superior Court (Gonzalez)*
5 Cal.4th 1126, 22 Cal. Rptr. 2d 504, 857 P.2d 325 (1993) ........................................ 9

*New Falls Corp. v. Boyajian (In re Boyajian)*
367 BR 138, 2007 LEXIS 1251, 25 (9th Cir BAP 2007) ........................................... 12

*P.R. Mallory Co. v. NLRB*
400 F.2d 956, 959 (7th Cir.1968), cert. denied, 394 U.S. 918,
89 S.Ct. 1191, 22 L. Ed. 2d 432, 22 L.Ed.2d 452 (1969) .......................................... 23

*POM Wonderful LLC v. Coca Cola Co.*
166 F. Supp. 3d 1085 (C.D. Cal. 2016) ..................................................................... 18

*Precision Inst. Mfg. Co. v. Automotive Maintenance Mach. Co.*
324 U.S. 806, 89 L. Ed. 1381, 65 S. Ct. 993 (1945).................................................. 18

iv

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*Salas v. Sierra Chem. Co.*
  59 Cal. 4th 407, 173 Cal. Rptr. 3d 689, 327 P.3d 797 (2014) ........................................ 18

*Scott v. Pasadena Unified Sch Dist.*
  306 F.3d 646 (9th Cir. 2001) ............................................................................................. 9

*Seeger v. Odell*
  18 Cal. 2d 409; 115 P.2d 977 (1941) .............................................................................. 15

*Service by Medallion, Inc. v. Clorox Co.*
  44 Cal. App. 4th 1807, 52 Cal. Rptr. 2d 650 (Cal. App. 1996) ...................................... 16

*Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*
  234 F.3d 1081 (9th Cir. 2000) ......................................................................................... 11

*United States v. Berger*
  587 F.3d 1038 (9th Cir. 2009) ......................................................................................... 16

*Weiss v. Alicea (In re Alicea)*
  230 B.R. 492 (Bankr. S.D.N.Y. 1999) ............................................................................ 11

**Statutes**

11 U.S.C. §523(a) ........................................................................................... 1, 8, 9, 11, 12

California Civil Code § 1607 ............................................................................................ 20

California Civil Code § 1667 ............................................................................................ 20

California Civil Code § 1668 ...................................................................................... 20, 21

**Other Authorities**

4 Collier On Bankruptcy §523.05 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ................. 11

4 Collier on Bankruptcy P 523.08[1][a] (15th ed. rev. 2000) ......................................... 11

*Harpe, et al.*, The Law of Torts (2d ed. 1986) § 7.13, p. 465 ...................................... 15

Prosser on the Law of Torts at 749 (1941) ...................................................................... 15

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA 345931 v8 05233.004

1  Defendant, Shaman Bakshi ("<u>Defendant</u>"), respectfully submits the following Memorandum

2  of Points and Authorities in Support of his Pre-Trial Brief.

3  <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.**

4  <u>**INTRODUCTION**</u>

5

6  A single claim for relief pursuant to 11 U.S.C. §523(a)(2)(A) is at issue.

7  The Complaint outlines a financial opportunity ("<u>Financial Opportunity</u>") wherein €300,000

8  was to be deposited into a third party escrow to facilitate the issuance of a €50,000,000 Standby

9  Letter of Credit ("<u>SBLC</u>") from HSBC Bank (UK) ("<u>HSBC Bank</u>"). The SBLC would be pledged to

10  another company, NACC, who would draw down €20,000,000 against its line of credit with HSBC

11  Bank. NACC would then pay €20,000,000 to the Plaintiff on a non-recourse basis. The Financial

12  Opportunity would be accomplished in a matter of days, not months, and the funds could be used by

13  Plaintiff for any purpose without any measure of tax withholding.  Plaintiff claims the Defendant

14  misrepresented the probability of success of the deal which misrepresentations caused his harm.

15  As set forth in the Pre-Trial Stipulation and Order ("<u>PTO</u>", a copy of which is attached hereto

16  as Ex. A), Plaintiff alleges Defendant misrepresented his (1) financial acumen, (2) his work

17  experience, (3) his familiarity and involvement in similar transactions, (4) his prior business dealings

18  with the individuals involved in the transaction, (5) his ability to repay Plaintiff if the transaction

19  failed, (6) his ability to repay Plaintiff in 5 business days if the transaction failed, and (7) executed

20  multiple personal and corporate guarantees promising to indemnify him which would remove his

21  risk from the Financial Opportunity. (PTO, p. 14, §2(a))  According to Plaintiff, Defendant executed

22  personal and corporate guarantees to entice him to "invest in the financing scheme". "Relying on

23  these representations, final agreements to memorialize the proposed Financial Opportunity were

24  negotiated between Plaintiff and Bakshi". (Complaint, ¶13)

25  The problem with the above narrative is that Plaintiff, did not enter into a contract or

26  agreement for the Financial Opportunity in question with the Defendant.  Plaintiff contracted with,

27  Sabastian Anthonysamy ("<u>Anthonysamy</u>"). (PTO, Fact Stip. §Y, p. 6)   Mr. Anthonysamy was to

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

obtain the SBLC.   Plaintiff opened escrow with Commercial Escrow Services ("CES") and Creative Financial Resources, LLC ("CFR"). and the principals at CFR, Rik Wlodarczyk and Brad Russell. (PTO, Fact Stip. §§V & W, p. 6) Plaintiff acknowledged in the escrow documents CFR brought him the Financial Opportunity.  (Def. Trial Ex. C, p. 1) Despite the red flags that the contract documents contradicted one another or were incomplete, Plaintiff released the escrow funds without waiting for the SBLC or the commitment to make the SBLC being deposited into escrow.  Plaintiff blindly ignored the risks of the transactions and released the funds because he unjustifiably believed that obtaining personal guaranties removed the risks of a transaction he knew was fraught with risks.

Ten days after the disbursement of the escrow funds, Anthonysamy relayed that HSBC Bank demanded Plaintiff sign an indemnification agreement for the loan. Plaintiff balked, demanded his monies be returned, and the Financial Opportunity failed. Plaintiff then sued Anthonysamy, CFR, Wlodarczyk and Defendant.

The evidence will establish Plaintiff had been searching for similar financial opportunities long before he met Defendant. He was looking for transactions to put down a small amount of money and reap a windfall as long as he had no risk and received the monies on a non-recourse basis.  As a sophisticated businessman and a lawyer, he knew what he was looking for, the risks involved, and the fact the investment could fail. In the present Financial Opportunity, Plaintiff stood to realize upwards of  €20,000,000 on a non-recourse basis, yet he never bothered to meet the parties to the contract. His due diligence consisted of one call to the escrow officer to ask about whether she had performed similar deals with the principals to the contract and had they been successful.

Plaintiff blames Defendant for structuring the deal and fraudulently guaranteeing the success of the transaction. But for the fraudulent personal Guarantees, he would have been insulated from any risk of loss.

The evidence will further demonstrate Plaintiff volitionally entered into and in fact drafted many of the transaction documents placed in escrow. The Financial Opportunity was, at all times, within his final control. But, he viewed the Financial Opportunity as a game, which as long as he had personal guaranties from those involved, he was willing to play. No personal guaranty of Defendant or another, could insulate Plaintiff from the risks of this deal, but Plaintiff's conduct could.  On

2

March 1, 2011, Plaintiff released the escrow funds despite the fact no SBLC or Commitment to Lend was deposited into escrow. Plaintiff could have backed out at any time, delayed the closing, or demanded further assurance from the principals, but he was content with how he structured the deal to shift any loss to others. The Financial Opportunity had no particular business purpose and, by its very nature, would result in a windfall to Plaintiff and a loss (an unpaid debt) to either NACC, HSBC Bank, or Mr. Anthonysamy. Plaintiff's real grievance is that he suffered the loss as opposed to the financial institutions where he sought the loss to reside.

During the course of discovery it was also made clear that Plaintiff did not invest €300,000 in the Financial Opportunity. Rather, GeoXplor, a mining company, wired $427,950 into escrow. The evidence will demonstrate that Plaintiffs have no connection to GeoXplor and Plaintiff has no right to assert the loss of a third-party corporation.  According to Plaintiff, GeoXplor is affiliated with Mr. Ashworth and sometime between six to twelve months <u>after</u> the funds were released out of escrow he sent Mr. Ashworth €150,000. However, by the conclusion of discovery, Plaintiffs' produced no loan, investment agreement or other document to evidence a repayment to GeoXplor or to Mr. Ashworth.  The failure to produce documents which by its very nature are in his control triggers the *adverse inference rule* and an evidentiary presumption such documents if produced would confirm no payment was made, it was made to a different party, or in a different amount.  Plaintiffs are before this Court as a creditor in the estate of Defendant by virtue of a $567,000 Default Judgment obtained based on representations to the State Court of California that Plaintiff invested and lost €300,000 in the Financial Opportunity. The assertion was not only inaccurate, but false. Plaintiff's standing before this Court is manufactured.

## II.

## STATEMENT OF FACTS

### A.    The Parties:

Plaintiff is a non-practicing lawyer with a long history of involvement in cross-border motion picture finance. Plaintiff, the Storytellers Group Enterprises Co. ("Storytellers") is a Canadian corporation which Plaintiff claims he solely owns and controls. (PTO, Stip. Fact §D, p. 2) As a young lawyer, Plaintiff worked for 20th Century Fox reviewing and drafting contracts.  Thereafter,

DOCS_LA 345931 v8 05233.004

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1 | he moved to Canada and formed his own company which raised capital and pioneered tax shelters

2 | for cross-border film production investments.

3 | Defendant has an undergraduate degree and background in accounting and finance having

4 | worked as an auditor at The General Electric Company and GE Capital. Defendant served as an

5 | independent consultant for companies with respect to their business, finances M&A transactions, and

6 | post-acquisition integrations of companies. He is familiar with the financial documents associated

7 | with operating a business, cash flow, projections, and financial modeling. The Defendant also

8 | maintained a background in the film industry having worked with various entertainment companies

9 | and individuals to locate projects in Film and Entertainment and to create business opportunities

10 | during his time at GE.

11 | **B.**    **The Events:**

12 | The evidence will demonstrate Defendant and Plaintiff were introduced through a mutual

13 | acquaintance, Janet Holman ("Holman"). (PTO, Stip. Fact §E, p. 2) Plaintiff knew Ms. Holman

14 | since 2010 and was working with her to find financing in connection with her motion picture

15 | endeavors, specifically a project on Captain Cook.  Plaintiff and Defendant met in the lobby of a

16 | hotel in Westlake Village for approximately one hour. Plaintiff was accompanied at the meeting by

17 | his colleague, Garry Jamieson ("Jamieson"). (PTO, Stip. Fact §F, p. 2) Mr. Jamieson was a business

18 | associate who specialized in arranging multiparty investments.  Jamieson told Plaintiff he was aware

19 | of ventures where a letter of credit would be offered to secure loans drawn from existing commercial

20 | credit lines.  The obligation to repay would be based on a promissory note.  The loans would be

21 | issued on a non-recourse basis such that the beneficiary of a credit-draw down could keep the loan

22 | proceeds free and clear after a year and a day.  Plaintiff knew Jamieson wanted to raise a lot of

23 | money so he could invest in deals and become a player in the movie film industry.  Plaintiff wanted

24 | Jamieson to meet Defendant to see if Defendant could help Jamieson raise a lot of money.  If

25 | Jamieson raised a lot of money, he could become an investor in Plaintiff's projects.

26 | On **October 27, 2011**, the meeting took place. (PTO, Stip. Fact §F, p. 2)  The parties

27 | discussed movie film production business in general, motion pictures, tax credits and the potential

28 | for a film studio in Hawaii. According to Plaintiff, Mr. Jamieson raised the issue of a cash backed

4

SBLC at the meeting.  Plaintiff could not recall the details or specifics of the transactions which he claimed Defendant discussed at the meeting. (Def. Trial Ex. NN, Supp. Response #1) Plaintiff and Defendant never met again in person. Jamieson and Defendant never met again in person.

Plaintiff indicates he received Defendant's resume sometime later and forwarded it on to Mr. Jamieson to review.  Over the course of the next months, Jamieson and Defendant talked about various projects according to what Plaintiff claims was relayed to him by Jamieson.

At the **End of December 2010**, Jamieson told Plaintiff he was not interested in proceeding any further with Defendant. (PTO, Stip. Fact §M, p. 4)

**On December 29, 2010**, Defendant separated from his wife after 9 years of marriage and 13 months following the birth of his daughter.  The separation was extremely difficult given the age of his daughter, his being forced to move out, and his desire the family remain together.  Family members of Defendant's and his spouse were also actively involved and a source of open contention. They were unable to save the marriage and in September 2012, Defendant's wife filed for divorce.

In **January 2011**, Defendant declined to go further with the discussions with Plaintiff. Defendant introduced Plaintiff to CFR and Mr. Wlodarczyk who specialized in arranging private financing. (PTO, Stip. Fact §G, p. 2)  Mr. Wlodarczyk talked with Plaintiff and described the Financial Opportunity as well as suggested the use of  CES as the escrow agent to hold funds and document the Financial Opportunity.  CES had handled numerous other escrows with CFR involving traditional and non-traditional financing arrangements. (PTO, Stip. Fact §W, p. 2)   (PTO, Stip. Fact §X, p. 6). CES had never met or done any other prior deal with Plaintiff or Defendant. (PTO, Stip. Fact §X, p. 6)

On **February 23, 2011**, escrow was opened at CES by completion of Escrow Instructions (the "Escrow Instructions"). (PTO, Stip. Fact §V, p. 6)   The escrow was established between Plaintiffs Cheikes and Storyteller, on one-hand entered, and Anthonysamy. (PTO, Stip. Fact §Y, p. 6).  By its terms, Plaintiff was to deposit €300,000 into escrow and Anthonysamy or "the client" was to deposit a copy of the "commitment to lend". (Def. Trial Ex. A, BAK-CHEIK 001)  Final authorization to release funds had to be given by Plaintiff to the escrow officer both orally and in writing for any funds to be released. (PTO, Stip. Fact §BB, p. 7) According to the Escrow

5

1    Instructions, upon disbursement of the funds in escrow account, escrow was closed. (Def. Trial Ex.

2    A, BAK-CHEIK 002-003)

3        Plaintiffs and Anthonysamy also executed and deposited into escrow the HSBC Bank (UK)

4    Standby Letter of Credit Issuance Agreement which reflected the terms of their agreement ("Standby

5    Letter Agreement"). (Def. Trial Ex. B, BAK-CHEIK 274-280). The Standby Letter Agreement was

6    filled with errors, inconsistencies and blanks. Plaintiff and Anthonysamy also executed and

7    deposited into escrow the Irrevocable Pay Order and Master Fee Protection Agreement (the

8    "Irrevocable Pay Order"). The document identified the Financing Opportunity as delivered to

9    Plaintiffs by CFR through Rik Wlodarczyk and Brad Russell. (Def. Trial Ex. C, Depo. Ex. #5) The

10    Irrevocable Pay Order referenced that Plaintiffs consented to pay the CFR and intermediaries of the

11    escrow for this private opportunity.

12        On or about **February 23, 2011**, the evidence will indicate that Plaintiff received a letter

13    from NACC located in Panama City and was personally contacted by Mr. James Wells (Def. Trial

14    Ex. Q, Ex. 72 Cheikes' Depo.). Plaintiff talked with NACC as they were to receive the SBLC issued

15    by HSBC Bank in order to draw down €20,000,000 on their line of credit and distribute to Plaintiffs

16    on a non-recourse basis. NACC was also to indemnify HSBC Bank, if the loan funds were not

17    returned.  The evidence will demonstrate Plaintiff never asked to see any evidence that NACC had a

18    line of credit with HSBC Bank or the ability to repay that sum of money and Plaintiff never intended

19    to return the monies to NACC.

20        On **February 23, 2011**, Plaintiff alleges that he did not want any risk in the Financial

21    Opportunity so he drafted and forwarded to Defendant the Distribution of Proceeds and Personal

22    Guarantee Agreement (the "Bakshi Guarantee") agreeing to return the escrow funds in the event the

23    SBLC was not issued. (Plaintiff Trial Ex. 9) Plaintiff did not retain or produce the original document

24    in the adversary and does not know if an original exists. Defendant contends the document does not

25    contain an authentic signature of Defendant but a replicated image that is not a signature of the

26    Defendant. Defendant will proffer the testimony of Ms. Chrisman, a forensic document examiner, on

27    the issue.

28

DOCS_LA 345931 v8 05233.004

1    On **February 25, 2011**, the Pay Order Request was deposited by Anthonysamy into escrow

2    wherein any funds would be distributed as follows: (a) €200,000 to Anthonysamy, (b) €80,000 to

3    Creative Financial Resources, LLC, and (c) €20,000 to ADPF Investments PTE, Ltd. (PTO, §Z;

4    Def. Trial Ex. D, Pay Order Request, BAK-CHEIK 0017-0018).

5    On **February 27, 2011**, Plaintiff wrote to the escrow officer Antoinette Hardstone ("<u>Ms.</u>

6    <u>Hardstone</u>") to confirm her understanding that she would meticulously adhere to the terms of the

7    Escrow Instructions he drafted which required his oral and written permission to release any funds.

8    (Def. Trial Ex. I, Depo. Letter dated Feb. 27, 2011)

9    Ms. Hardstone testified in her deposition (which was designated and will be offered into

10    evidence) that she did receive a call from Plaintiff Stephen Cheikes. (Def. Trial Ex. U)  Her

11    testimony confirms that she knew CFR and the principals Brad Russell and Mr. Wlodarczyk. CES

12    had worked with them on other occasions. She viewed the Financial Opportunity as a "holding

13    escrow" wherein CFR were the facilitators of the transaction with Plaintiff. She recalls Mr. Cheikes

14    wanted to make clear she would need both oral and written authorization from him to distribute the

15    funds out of escrow. She does not know Defendant and had not worked with him on this deal or any

16    other deal involving CFR.

17    On **March 1, 2011**, GeoXplor Corp., wired $427,950 to CES. GeoXplor Corp., is a mining

18    company. (Def. Trial Ex. H, T; Depo. of Cheikes, pp. 208-209) Plaintiff presumes this was

19    Mr. Ashworth's company which wired the funds into the account. ((PTO, Fact §D(d), p, 26,

20    lns. 21-24);  Plaintiff testified that neither Plaintiff Stephen Cheikes nor Storytellers, had ever done

21    business with GeoXplor. There was no oral or written agreement between the Plaintiffs and

22    GeoXplor to contribute the funds to the Financial Opportunity.

23    On **March 1, 2011**, Plaintiffs received the personal and corporate guarantee of Mr.

24    Wlodarczyk and CFR (the "<u>Wlodarczyk Guarantee</u>"). Plaintiff will testify he would not release the

25    funds in escrow absent the Wlodarczyk Guarantee. (Def. Trial Ex. F, emails between Ms. Hardstone

26    and Wlodarczyk dated March 1, 2011)

27    On **March 1, 2011**, Plaintiff directed the escrow officer to release the €300,000 held in

28    escrow. No SBLC was deposited into escrow.  No commitment to issue the SBLC was deposited

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

7

into escrow. According to the testimony of the escrow officer and escrow instructions, escrow closed on March 1 or March 2, 2011, with the distribution of the proceeds out of escrow in accordance with the Pay Order Request.

On **March 9, 2011,** Wlodarczyk contacted Plaintiff and indicated that the SBLC was ready to be released but the compliance department at HSBC demanded that not only NACC provide an indemnification agreement, but Plaintiff, Storytellers as well since it was the beneficiary of the loan. Plaintiff had no intention of being responsible for NACC returning the loan proceeds drawn against the SBLC issued from HSBC Bank and refused to sign the indemnity agreement.

When the transaction failed, Plaintiff demanded his money back from Sebastian Anthonysamy ("Anthonysamy"), the party to the escrow. When funds were not returned, Plaintiff sued Wlodarczyk, Anthonysamy, and Defendant. Plaintiff filed a complaint against CES, and the escrow officer, contending she improperly released the funds out of escrow as there was no commitment to lend.

**C.**    **Recoveries Against Others:**

It is an undisputed fact Plaintiff collected $40,000 dollars from Mr. Anthonysamy. Plaintiff entered into a stipulated judgment with Wlodarczyk, and took the default judgment of Defendant. Plaintiff will testify he collected just over $17,000 from Wlodarczyk but produced no documents on the  issue during discovery.

**III.**

**PROCEDURAL STATEMENT**

On January 30, 2015 Plaintiff obtained a default Judgment against Defendant captioned, Stephen Cheikes v.  Shaman Bakshi, case no. 30-2013-00637770 in the Los Angeles Superior Court.

On April 24, 2018, the Defendant filed his Petition for Relief under Chapter 7 of the Bankruptcy Code [Case No. 2:18-bk-14672-VZ; Dkt. No. 1] (the "Bakshi Bankruptcy").

On July 23, 2018, Plaintiff filed the Adversary Complaint for Non-Dischargeability of Debt Pursuant to 11 U.S.C. §§523(a)(2)(A), (a)(2)(B), (a)(4) and (a)(6) [Adv. No. 2:18-ap-01235-VZ; Dkt. No. 1] in the bankruptcy of Shaman Bakshi (the "Complaint").

8

1    On September 17, 2019, this Court entered an order approving the Dismissal Stipulation of

2    the Third Claim For Relief pursuant to 11 U.S.C. §523(a)(4), and the Fourth Claim For Relief

3    pursuant to 11 U.S.C. §523(a)(6) with prejudice. [Dkt. No. 80]

4    On October 24, 2019, this Court entered an order dismissing the Second Claim For Relief

5    pursuant to 11 U.S.C. §523(a)(B), but denying the Defendant's Motion For Summary Judgment as to

6    the First Claim For Relief  pursuant to 11 U.S.C. §523(a)(2)(A), which remains at issue. [Dkt.

7    No. 93]

8    **IV.**

9    **<u>ARGUMENT</u>**

10   **A.    <u>Plaintiff Stephen Cheikes Lacks Standing to Pursue the Adversary in Federal Court as
     He Personally Was Not Injured</u>**

11
12   The federal courts are courts of limited jurisdiction and have not been vested with unlimited

     open-ended lawmaking powers. *Scott v. Pasadena Unified Sch Dist.*, 306 F.3d 646, 654 (9th Cir.
13
     2001) The requirement of standing is a core issue to prevent courts from issuing advisory opinions
14
     not founded upon the facts of a controversy between truly adverse parties. *Id.* at 654.  A plaintiff
15
     must demonstrate that he has suffered a cognizable injury sufficient to satisfy the requirements of
16
     Article III. See *Direct List Ltd. Liab. Co. v. Vistage Int'l, Inc.*, No. 15cv2025-WQH-JLB, 2016 U.S.
17
     Dist. LEXIS 152830, at *11-12 (S.D. Cal. Nov. 3, 2016)  A litigant's standing to sue is a threshold
18
     issue to be resolved before the matter can be reached on the merits. (*Hernandez v. Atlantic Finance*
19
     *Co.*, 105 Cal. App. 3d 65, 71, 164 Cal. Rptr. 279 (1980).) "If we were to conclude that plaintiff did
20
     not have standing to maintain the action, not having been personally damaged by the defendants'
21
     conduct, then there would be no need to address the merits of her cause. Equally wasteful of judicial
22
     resources would be a resolution on the merits without reaching the standing issue." (*Ibid.*) We will
23
     not address the merits of litigation when the plaintiff lacks standing, because "California courts have
24
     no power … to render advisory opinions or give declaratory relief.' " (*Municipal Court v. Superior*
25
     *Court (Gonzalez)*, 5 Cal.4th 1126, 1132, 22 Cal. Rptr. 2d 504, 857 P.2d 325 (1993).)
26
     The PTO confirms that someone other than Plaintiff wired the monies into escrow. (PTO,
27
     Fact §AA, p. 7) According to Plaintiff, the monies came from "one of Mr. Ashworth's business
28

DOCS_LA 345931 v8 05233.004

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

accounts". (PTO, §AA, lines 4-7, p. 7) The wire instructions from escrow confirm the source of the funds paid into escrow was from GeoXplor Corp., a mining company.   (Def. Trial Ex. H)  Plaintiff has no specific knowledge of GeoXplor. (Def. Trial Ex. T, pp. 208-209) Plaintiff was not an officer or director of GeoXplor.  Plaintiff testified that neither Cheikes nor Storytellers, had ever done business with GeoXplor. There was no agreement between the Plaintiffs and GeoXplor to contribute the funds to the Financial Opportunity.  Rather, Plaintiff will claim that sometime later he wired one-half the funds to Mr. Ashworth, not GeoXplor. (PTO, §AA, p. 7)  Defendant specifically asked in discovery for any contracts, agreements or cancelled checks exchanged between Plaintiff and Mr. Ashworth:

> #26.    Any and all DOCUMENTS which YOU sent to or received from Clive Ashworth RELATING TO the TRANSACTION.[1] (Def. Trial Ex. FF and GG, #26)

Plaintiff did not provide any cancelled check, bank record or evidence he sent money to Mr. Ashworth. Plaintiff did not provide any cancelled check, bank record or evidence he sent monies to GeoXplor, who is the real party in interest.  A plaintiff must demonstrate that he has suffered a cognizable injury sufficient to satisfy the requirements of Article III. *Direct List Ltd. Liab. Co. v. Vistage Int'l, Inc.*, No. 15cv2025-WQH-JLB, 2016 U.S. Dist. LEXIS 152830, at *11-12 (S.D. Cal. Nov. 3, 2016) (the record demonstrates that plaintiff has failed to demonstrate that Direct List is "*his* company" and that any of the damages alleged in the complaint are distinct from damages alleged to have been suffered by Direct List)  The Complaint is properly dismissed as Plaintiff has not been personally injured.

Second, Plaintiff Steven Cheikes cannot establish any injury suffered by Storytellers. Plaintiff claims he is the principal of Storytellers, a Canadian corporation.  Yet, he produced no articles of incorporation, by-laws, minutes of the board of directors, corporate resolution or documents evidencing an agreement to facilitate a loan for Plaintiff Cheikes personally. (Def. Trial

---

[1] The definition of DOCUMENT in the Request to Produce Documents, p. 5,  included proposals, offers, contracts, agreements, checks and cancelled checks…(Def. Trial Ex. DD)

DOCS_LA 345931 v8 05233.004

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Ex. KK, Responses to Req to Produce, Set 3, ##1-5) Storytellers has no standing as it has not

personally been injured either.

**B.      Legal Standard in Dischargeability of Debts**

In determining whether a particular debt falls within one of the exceptions of section 523,

exceptions to discharge are strictly construed against the objecting creditor in favor of the

Defendant. 4 Collier On Bankruptcy §523.05 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

*California Franchise Tax Bd. v. Jackson (In re Jackson)*, 184 F.3d 1046, 1051 (9th Cir. 1999)[2]

Dischargeability of debts under §523(a)(2)(A) strikes a balance between competing goals.  *Klapp v.*

*Landsman (In re Klapp)*, 706 F.2d 998, 999 (9th Cir. 1983); *Beaupied v. Chang (In re Chang)*, 163

F.3d 1138, 1140 (9th Cir. 1998) (discussing the competing policies of "fresh start" and enforcement

of domestic support obligations embodied in §523(a)(5)). At the same time, courts recognized that

Congress created the exception "to prevent a Defendant from retaining the benefits of property

obtained by fraudulent means…."  *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re*

*Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000) (quoting 4 Collier on Bankruptcy P 523.08[1][a] (15th

ed. rev. 2000).

**C.      Two of the Six Claims for Misrepresentations Concerning Financial Ability to Pay Are**
**Not Actionable Under §§523(a)(2)**

Pursuant to 11 U.S.C. §523(a)(2)(A), alleged fraudulent representations must <u>not</u> be a

representation respecting the Debtor's or an insider's financial condition. (*Bank v. Pho (In re Pho)*,

2015 Bankr. LEXIS 3498, 35(Bankr. N.D. Cal. 2015).  Sections 523(a)(2)(A) and 523(a)(2)(B) are

mutually exclusive. See *Weiss v. Alicea (In re Alicea),* 230 B.R. 492, 500 (Bankr. S.D.N.Y. 1999).

While subsection (a)(2)(A) specifically provides that it is inapplicable to statements regarding the

debtor's financial condition, subsection <u>(a)(2)(B)</u> covers only statements regarding the debtor's

financial condition.  *Citik Ka Wah Bank Ltd. v Wong (In re Wong)*, 291 B.R. 266, 274(Bankr.

S.D.N.Y 2003)  As set forth in the Pre-Trial Stipulation, of the six representations alleged to be

fraudulent pursuant to §523(a)(2)(A), the last two alleged representations as identified in the PTO;

"(5) his [Defendant's] ability to repay Plaintiff if the Transaction failed, and (6) his ability to repay

---

[2] *Berkovich v. Cal. Franchise Tax Bd. (In re Berkovich)*, 15 F.4th 997, 2021 U.S. App. LEXIS 30676 noted that other
portions of the opinion superseded by 2005 amendments to BAPCA as it relates 11 U.S.C. §523(a)(1)(B).

Plaintiff €300,000 within five business days of the Transaction failing", are alleged representations concerning the Defendant's financial condition and not properly subject to a §523(a)(2)(A) claim for relief. (PTO, §II(a), p. 14) Neither claimed misrepresentation is justiciable under §523(a)(2)(A).

Plaintiff also generally references a right to sue upon fraudulent misrepresentations based upon "multiple personal and corporate guarantees promising to indemnify Plaintiff against any risk of loss and promising to repay Plaintiff the €300,000 if the Transaction failed". However, only one guarantee was executed *prior to* the funds being disbursed out of escrow on March 1, 2011, the Bakshi Guarantee. The other alleged guarantees obtained after March 1, 2011, do not have a causal link to the loss of the escrow funds distributed on March 1, 2011. See *New Falls Corp. v. Boyajian (In re Boyajian),* 367 BR 138, 147, 2007 LEXIS 1251, 25 (9th Cir BAP 2007) (Congress' use of "obtained by" in §523(a)(2) indicates the fraudulent conduct occurred at the inception of the debt)

## D.    The Remaining Miscellaneous Fraudulent Misrepresentations Identified In The Pre-Trial Stipulation For The First Claim For Relief

To support a claim of nondischargeability under §523(a)(2)(A), the statute requires the creditor to prove: (1) the Defendant made . . . representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made. *Ghomeshi v. Sabban (In re Sabban*), 600 F.3d 1219, 1222 (9th Cir. 2010).[3] The elements of fraud in 11 U.S.C. §523(a)(2) are identical to those required for a California cause of action for fraud. *In re Younie*, 211 B.R. 367, 374 (9th Cir. B.A.P. 1997).

The PTO identifies four remaining representations which Plaintiff asserts he relied upon and which were the cause in fact and proximate cause of the damages he claim he sustained. (PTO, §II(a)., p. 14)

---

[3] To prove that a debt is nondischargeable under 11 U.S.C. §523(a)(2)(B), a creditor must show: (1) a representation of fact by the debtor, (2) that was material, (3) that the debtor knew at the time to be false, (4) that the debtor made with the intention of deceiving the creditor, (5) upon which the creditor relied, (6) that the creditor's reliance was reasonable, and (7) that damage proximately resulted from the misrepresentation. The creditor has the burden of proof to prove by a preponderance of the evidence all the elements. *Berr v. FDIC (In re Berr)*, 172 B.R. 299(9th Cir. BAP, 1994)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**E.    The Alleged Misrepresentations as to Defendant's Financial Acumen, Work Experience, Familiarity with the Parties & Involvement in Similar Transactions Are Not Actionable**

Like acts of nature and their consequences, the future state of a financial market is unknown. Any future market forecast must be regarded not as fact but as prediction or speculation. (*Gentry v. eBay, Inc., supra*, 99 Cal.App.4th, 816, 835 (Cal app. 4th. 2002) (describing vague, highly speculative statement on demurrer as "not the sort of statement that a consumer would interpret as factual or upon which he or she could reasonably rely.")  Alleged representations—that plaintiffs' property would continue to appreciate in the future and that plaintiffs could then sell or refinance their home based on this forecasted future appreciation—are not actionable in fraud. *Cansino v. Bank of America*, 224 Cal. App. 4th 1462, 1470-71, 169 Cal Rptr. 3d 619 (2014) Predictions as to future events, or statements as to future action by some third party, are deemed opinions, and not actionable fraud. *UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*, 2015 U.S. Dist. LEXIS 192159, 54 (C.D. Cal. 2015) The law is well established that actionable misrepresentations must pertain to past or existing material facts.  *Cansino*, 224 Cal. App. 4th 1462, 1469 (2014)

Plaintiffs' claimed misrepresentations are vague, general descriptions such as financial acumen, work experience, familiarity with similar transactions, and prior business dealings with others.  Defendant referred Plaintiff to a company which by its very title, "Creative Financial Resources", evidenced its involvement in creating financial opportunities.  The essence of the miscellaneous misrepresentations claim is that Defendant guaranteed CFR's success in the deal.  The Complaint in fact made that exact allegation:  Defendant represented he had significant prior, successful business dealings with and had previously successfully completed several of these transactions with other investors "**and the issuance by HSBC of the SLBC, cash backed by Mr. Anthonysamy, was assured.**" [Adv. Complaint, Dkt. No. 1, ¶10]  Plaintiffs' claim is an assertion that Defendant guaranteed a future event by a third party and not a misrepresentation of past or existing fact.

To induce Plaintiff to do the deal, Plaintiff claims "Defendant made several representations regarding his prior successes in similar transactions". Yet in written discovery, Plaintiff claimed "Responding party cannot recall the details of the specifics of the prior transactions discussed at the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

meeting." [See Ex. NN, Plaintiff's Supp. Response to Interrog. #5]  Similarly, Plaintiff testified in

deposition that the single meeting that occurred on October 27, 2010, was set up so Defendant could

talk with Jamieson, not Plaintiff.  Plaintiffs' allegations that Defendant misrepresented his

background, acumen experience and success rates is undercut by Plaintiff's admission that when

Jamieson backed out at the end of 2010, only then did Plaintiff contemplate being a party.  The

evidence will demonstrate that Defendant referred Plaintiff to Wlodarczyk and CFR at the time

Jamieson dropped out. Defendant did not have expertise with regard to the Financial Opportunity

and had bigger personal issues in his life that were a higher priority.  The contract documents recite

that the Financing Opportunity was delivered to Plaintiffs by CFR through Rik Wlodarczyk and

Brad Russell. (Def. Trial Ex. C, Depo. Ex. #5) However, Plaintiff will nonetheless claim Defendant

misrepresented his dealings with Anthonysamy, Russel and Wlodarczyk and the ability of the third

parties to perform. Future actions by third parties are not misrepresentations of fact nor is the

guarantee of success in a financial transaction.

**F.**    **Plaintiff's Claim He Relied On General Statements From Defendant And That He Was Insulated From Risk By A Guarantee In A Transaction He Admits Was Filled With Risks Is Not Justifiable Reliance Under California Law**

The Supreme Court noted that actual and justifiable reliance are embodied in the common

law concept of actual fraud requiring an intermediate level of reliance most frequently referred to as

"justifiable reliance". *Younie v. Gonya (in Re Younie)*, 211 B. R. 367, 373 (9th Cir. B.A.P 1997) In

determining whether there has been justifiable reliance, a court is to examine the particular qualities

and characteristics of the plaintiff and the circumstances of the particular case. *Citik Ka Wah Bank*

*Ltd. v Wong (In re Wong)*, 291 B.R. 266 (Bankr. S.D.N.Y 2003) A creditor must not only prove that

the debt was obtained by a false statement, but also that the creditor reasonably relied on the

misstatement.  *Id.*  Among the considerations, was there a "red flag" that would have alerted an

ordinarily prudent person to the possibility that the information is inaccurate, previous business

dealings that give rise to a relationship of trust or if even minimal investigation would have revealed

the inaccuracy of a debtor's representations. *Id*. at 275. Although a person ordinarily has no duty to

investigate the truth of a representation, "a person cannot purport to rely on preposterous

representations or close his eyes 'to avoid discovery of the truth.'" *In re Kirsh*, 973 F.2d 1454, 1459

14

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(9th Cir. 1992) (quoting *Seeger v. Odell*, 18 Cal. 2d 409; 115 P.2d 977, 981 (1941) (citing Prosser on the Law of Torts at 749 (1941)).  The element of *justifiable reliance* is also lacking when a party disregards that harm they know exists. *In re Urban*, 2014 Bankr. LEXIS 1669, at *35 (9th Cir. BAP) ("[A] duty to investigate is imposed on a creditor by virtue of suspicious circumstances. . . . Thus, 'justifiable reliance does not exist where a creditor ignores red flags.'") (quoting *In re Anastas*, 94 F.3d 1280, 1286 (9th Cir. 1996).

Here, Plaintiff had no prior existing relationship with Defendant, or any of the parties he contracted with in escrow.  The outward appearance of the Financial Opportunity, a €20MM payout on a €300,000 investment, is preposterous. The financial documents were incomplete, contained glaring inconsistencies such as missing letterhead, officer's names, seals, and inaccurate dates.

Plaintiff is a lawyer, skilled negotiator, and entrepreneur who engaged in the Financial Opportunity knowing it was" too good to be true" and was suspect on its face. Plaintiff performed no meaningful investigation of the parties involved, ignored the contradictions in the documents and nonetheless went forward with the transaction on an expedited timeline.  Plaintiff ignored the warning signs and moved to close because he unreasonably believed the guaranties removed his risk.

Even assuming a scenario where Plaintiff's reliance on misrepresentations were justifiable, it is axiomatic that no liability can attach if the damages sustained were otherwise inevitable or due to unrelated causes. *Kruse v. Bank of America,* 202 Cal. App. 3d 38, 41, 248 Cal. Rptr. 217 (1988), citing to (*Harpe, et al.*, The Law of Torts (2d ed. 1986) § 7.13, p. 465.  Here, Plaintiff's refusal to abide by the escrow instructions was the *proximate cause* of any damages.  As set forth in Section V.(C), *Proximate Cause*, Plaintiff released the monies out of escrow despite the fact the escrow terms were not met.  (PTO, Stip. Fact §BB, p. 7)  Plaintiff ignored the escrow instructions he in fact drafted because he thought the guaranties he obtained insulated himself from loss.  The belief was irrational and unfounded especially since he never asked for any financial documents or any form of financial disclosure from Defendant.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### G. **Plaintiff Personally Sustained No Damages**

Under California law, to obtain a recovery for fraud, a claimant must prove that he sustained damages as a proximate cause of the fraudulent conduct. *B. Braun Med., Inc. v. Rogers*, 163 Fed. Appx. 500, 507(9ᵗʰ Cir, 2006) citing *Kruse v. Bank of America*, 202 Cal. App. 3d 38, 248 Cal. Rptr. 217, 230 (1988). "Deception without resulting loss is not actionable fraud. *Id.* citing to *Service by Medallion, Inc. v. Clorox Co.*, 44 Cal. App. 4th 1807, 1818, 52 Cal. Rptr. 2d 650 (Cal. App. 1996). Under California law, speculative fraud damages are not actionable. *Id*. citing to *Agnew v. Parks,* 172 Cal. App. 2d 756, 758, 343 P.2d 118 (Cal. App. 1959).  The burden is upon Plaintiff in a fraud action, to establish that Plaintiff personally sustained the loss. *United States v. Berger*, 587 F.3d 1038, 1044(9ᵗʰ Cir. 2009) The evidence even before trial establishes Plaintiff invested nothing in the Financial Opportunity.

As stated in response to Request for Admissions, Plaintiff claims to have invested €150,000 in the Financial Opportunity, not the €300,000 he claimed in the Complaint.[4]  (Def. Trial Ex. Z, RFA, #20).   Plaintiff will claim at trial he invested €150,000, and lost those sums due to the fraudulent conduct of Defendant. However, the evidence indicates that a mining company, GeoXplor, was the non-party who wired the monies into escrow. Defendant asked for all documents to support or evidence Plaintiff deposited funds into escrow. (Def. Trial Ex. DD, RFA, #35). Defendant asked for any documents exchanged between Plaintiff and Ashworth related to the transaction.  (Def. Trial Ex. DD, RFA, #26). Plaintiff cannot carry his burden that he personally sustained damages of losing €150,000.

### H. **Any Recovery Is Reduced By Damages Already Collected**

"It goes without saying that courts can and should preclude double recovery by an individual." *California v. IntelliGender, LLC*, 771 F.3d 1169, 1179 (9ᵗʰ Cir. 2014) citing *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002) (internal quotation marks omitted). Under California law, the general rule of compensatory damages bars double recovery for the same wrong. *Greenfield Mhp Assocs., L.P. v. Ametek, Inc.,* 2018 U.S. Dist. LEXIS

---

[4] See herein Section V.A., discussing the affirmative defense of Unclean Hands.

16

23856, *39 (S.D. Cal. 2018) citing to (*Krusi v. Bear, Stearns & Co.*, 192 Cal. Rptr. 793, 798 (Ct. App. 1983).

Here, at best, Plaintiff invested €150,000 in the Financial Opportunity. However, Plaintiff recovered $40,000 from Anthonysamy and refused to produce documents to substantiate the amounts recovered from Wlodarczyk.

Request For Production #23:

Any and all DOCUMENTS in your possession custody or control regarding the investigation or pursuit of WLODARCZYK for recovery of any sum or wrongful act alleged in the COMPLAINT, including but not limited to, any and all documents received by YOU or your lawyers during discovery in other litigation. (Def. Trial Brief, Ex. DD, 12/18/2018, #20)

Response To Request For Production #23:

… Responding party objects to this request on the grounds that it is neither relevant to the above-captioned proceedings, Responding party's claims asserted therein, nor is it reasonably calculated to lead to the Discovery of admissible evidence. (Def. Trial Brief, Ex. EE, 2/5/2019, #21)

Second Supplemental Response to Request for Production, #23 (erroneously numbered 20):

"… Responding party objects to this request on the grounds that it is neither relevant to the above-captioned proceedings, Responding party's claims asserted therein, nor is it reasonably calculated to lead to the Discovery of admissible evidence. Subject to and without waiving the foregoing objections, Responding party RESPONDS AS FOLLOWS: Responding party will produce responsive, non-privileged documents in their care custody or control that have not already been produced in this action or are not a matter of public record and equally available to the Propounding Party. See Est. of Young Through Young v. Holmes, 134 F.R.D. 291, 294 (D. Nev. 1991) (Def. Trial Brief, Ex. GG, 3/14/2019, #20)

Plaintiff produced Bates stamped documents CHEIKES 00001-00991 in the adversary action. No documents were produced memorializing sums recovered from Wlodarczyk. Plaintiff has admitted in prior testimony he has received at least $17,000 from Wlodarczyk. Given the admission of funds received from third party tortfeasors to the same transaction, the possibility of a double recovery is present. Plaintiff has the best evidence of what amount he recovered, was requested to produce the documents and failed to produce the records.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

17

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# V.

## <u>DEFENDANTS AFFIRMATIVE DEFENSES</u>

A.    <u>Plaintiff Obtained the Default Judgment in State Court With Unclean Hands and Recites the Same Inaccuracies in the Non-Dischargeability Complaint Before This Court</u>

The affirmative defense of unclean hands requires proof of the following elements: (1) the plaintiff engaged in inequitable conduct; and (2) the conduct "relates to the subject matter of its claims." *Levi Strauss & Co. v. Shilon,* 121 F.3d 1309, 1313 (9th Cir. 1997); *Allergia, Inc. v. Bouboulis,* 2017 U.S. Dist. LEXIS 90844 (S.D. Cal. 2017) [Generally, the equitable doctrine of unclean hands applies when a plaintiff has acted unconscionably, in bad faith, or inequitably in the matter in which the plaintiff seeks relief." *Salas v. Sierra Chem. Co.,* 59 Cal. 4th 407, 432, 173 Cal. Rptr. 3d 689, 327 P.3d 797 (2014). "If the required showing is made, unclean hands may be a complete defense to legal as well as equitable causes of action." *Id.* (citing *Mendoza v. Ruesga,* 169 Cal. App. 4th 270, 279, 86 Cal. Rptr. 3d 610 (2008)).] Unclean hands," unlike "do equity," requires inequitable conduct by a plaintiff in connection with the matter in controversy and provides a complete defense to the plaintiff's action. *Dickson, Carlson & Campillo v. Pole*, 83 Cal. App. 4th 436, 446, 99 Cal. Rptr. 2d 678 (2000). See *POM Wonderful LLC v. Coca Cola Co*., 166 F. Supp. 3d 1085, 1095(C.D. Cal. 2016).  The unclean hands doctrine derives from the equitable maxim that "he who comes into equity must come with clean hands." This maxim "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Ellenburg v. Brockway, Inc.,* 763 F.2d 1091, 1097 (9th Cir. 1985) citing to *Precision Inst. Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814, 89 L. Ed. 1381, 65 S. Ct. 993 (1945).

1.    **Plaintiff's Misrepresentations in Acquiring the Default Judgment.**

Another area of relevant inquiry is whether the plaintiff's dirtied his hands in acquiring the right he now asserts. *Ellenburg v. Brockway, Inc.,* 763 F.2d 1091, 1097(9th Cir. 1985)

In order to secure the default judgment in State Court against Defendant, Plaintiff stated in his declaration on January 7, 2018, that he personally wire transferred €300,000 euros into escrow. (Def. Trial Ex. SS, §5).  Before this Court, Plaintiff filed the Non-Dischargeability Complaint

18

wherein he claimed Plaintiffs <u>and</u> the Storytellers deposited the monies into escrow. (Adv. Dkt. No. 1, ¶14)

Defendant sought the evidence regarding the source of the funds and damages during course of written discovery.

| | |
|---|---|
| December 18, 2018: | Request For Admissions. (Def. Trial Ex. X, RFA #20) |
| January 28, 2019: | Plaintiff's Response: Objection as not relevant. (Def. Trial Ex. Y, RFA #20) |
| February 19, 2019: | Plaintiff's Supplemental Response: Admitted that one-half of those sums deposited into escrow were funds of Clive Ashworth. (Def. Trial Ex. Z, RFA #20). |

Plaintiff sought any documents to evidence Plaintiff deposited the funds or documents to memorialize the exchanges between Plaintiff and Mr. Ashworth with respect to the subject transaction and who deposited the sums into escrow.

| | |
|---|---|
| December 18, 2018: | Request For Production of Documents (Def. Trial Ex. DD, RFP #26, 27, 35) |
| February 5, 2019: | Plaintiff's Response to Defendant's First Set Of RQP. (Def. Trial Ex. EE, RFP #26, 27, 35) |
| March 24, 2019: | Plaintiff's Supplemental Response to RQP, Set One: Plaintiff will produce all responsive documents. (Def. Trial Ex. GG, erroneously labeled response #31) |

At deposition, Plaintiff admitted the funds were wired into escrow at CES on February 28, 2011 from GeoXplor Corp. GeoXplor Corp., is a mining company. (Def. Trial Ex. H) The evidence will show neither Plaintiffs Stephen Cheikes nor Storytellers Group, had ever done business with GeoXplor Corp. There was no agreement between GeoXplor and the Plaintiff to contribute the funds to the subject Financial Opportunity.

At trial, Plaintiff will admit that Mr. Ashworth's companies put up the cash, but claim he paid him €150,000 sometime between 6-12 months after the deal closed. He believes he wired the funds to Mr. Ashworth from Storytellers account, but he is not sure. (Ex. T, pp. 208-213, lns. 4-13) Plaintiff requested in discovery documents evidencing an agreement by Plaintiff Storytellers, at the corporate level, to loan Plaintiff Cheikes' €150,000 euros as part of the transaction.

| | |
|---|---|
| March 24, 2019: | Request For Production of Documents (Def. Trial Ex. II, RFP #1-6) |
| June 10, 2019: | Plaintiffs' Response To Request For Production of Documents. Objection as not relevant. (Def. Trial Ex. JJ, RFP #1-6) |
| July 10, 2019: | Plaintiffs' Supp. Response To Request For Production of Documents. Without waiving objections, Plaintiff has no responsive documents. (Def. Trial Ex. KK, RFP #1-6) |

19

DOCS_LA 345931 v8 05233.004

1    Initially, Plaintiff refused to produce minutes, articles of incorporation, by-laws, corporate

2    resolutions or any agreement by Plaintiffs Storytellers to facilitate the €150,000 investment into

3    escrow.  Plaintiff then provided supplemental responses and admitted no such documents exist. (Def.

4    Trial Ex. KK, RFP #1-6)

5    After two years of discovery, there is no evidence Plaintiff invested any sum, yet it is clear

6    the representations to the State Court in obtaining the default judgment and in the Non-

7    Dischargeability Complaint before this Court, are entirely false.  Plaintiffs did not put into escrow

8    €300,000.  Plaintiffs did not put into escrow €150,000.  These revelations were not easily

9    forthcoming but following objections that refused production.  The misrepresentation goes to the

10    heart of the Financial Opportunity which is before the Court.

**B.**    **The Alleged Bakshi Guarantee Is Unenforceable As At Its Purpose It Sought To Leave
A Loss Greater Than the Deposit With a Financial Institution**

12    California Civil Code § 1607 provides that the consideration for a contract must be lawful

13    within the meaning of Civil Code § 1667.  *Mukherjee v. Sir (In re Sir)*, 2010 Bankr. Lexis 1800, 35

14    (Bankr. ND. Cal., 2010).  California Civil Code § 1667 provides that a contract is unlawful if it is

15    "contrary to the policy of express law, though not expressly prohibited, or otherwise contrary to

16    good morals." *Id.*  California Civil Code § 1668 sets forth that "all contracts which have for their

17    object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful

18    injury to the personal property of another, or violation of law, whether willful or negligent, are

19    against the policy of the law".

20    Plaintiff seeks this court's assistance to enforce a contract, the Bakshi Guarantee, to

21    distribute proceeds to fund a transaction that even if lawful, seems like it was designed to leave a

22    large unpaid debt with a financial institution.

23

24    Q.    So this transaction contemplated NACC being stuck with the liability under the
standby letter of credit?

25    A.    Yes

26    Q.    Did you receive any indication that NACC had the ability to pay back HSBC UK?

27    A.    I didn't. I didn't ask, and I didn't care.

Q.    Did you review any documents that showed that NACC intended to pay back HSBC?

28

20

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

A.    I didn't ask, and I didn't care. I had no liability. That's all I cared about. (Def. Trial Ex. T, pp. 223-224)

On March 9, 2011, the evidence will demonstrate that Mr. Anthonysamy indicated HSBC Bank determined that the ultimate beneficiary of the Financial Opportunity, Plaintiff, needed to execute an indemnity agreement with HSBC Bank to cover any funds not returned to HSBC Bank one year and a day from inception.  It is undisputed that Plaintiff refused to sign the indemnification agreement as he was interested in the Financial Opportunity only on a non-recourse basis.

Plaintiff seeks to enforce that the Bakshi Guarantee which Plaintiff drafted to insure he was "without risk" and to apparently distribute millions of dollars should the Financial Opportunity be successful resulting in the loss being left with either NACC or HSBC Bank. Plaintiff's allegation of fraud essentially boils down to a claim that Defendant issued a guarantee that the risk of loss which he testified would be a certainty, would be placed at the feet of NACC or HSBC Bank.  By its very nature the Bakshi Guarantee contemplated injury to another and violates the spirit of California Civil Code § 1668 even if the deal was entirely legal.

C.    **Plaintiff or CES, by Releasing Funds Outside the Terms of the Escrow, or Agreeing to an Overly Complex Transaction Which Was Filled With Inconsistencies Was the Proximate Cause of the Loss of Escrow Funds**

A proximate cause defense evidences someone other than the named defendant proximately causes the injuries sustained.  *Gencarelli v. Twentieth Century Fox Film Corp.*, 2018 U.S. Dist LEXIS 5375, *10 (C.D. Cal. 2018)  Generally, proximate cause subdivides into cause in fact and legal cause. *Beard v. Mighty Lift, Inc.*, 224 F. Supp. 3d 1131, 1136 (W.D. Wa. 2016) (citing *Christen v. Lee*, 113 Wn.2d 479, 780 P.2d 1307, 1321 (Wash. 1989)). Cause in fact concerns the "but for" consequences of an act or the physical connection between the act and the injury. *Beard v. Mighty Lift, supra.,* at 1136. Cause in fact is generally a question of fact reserved for the jury, but the court may determine it as a matter of law if "the facts are undisputed and the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion," *Id.*  Legal causation, on the other hand, "rests on policy considerations as to how far the consequences of a defendant's acts should extend."  *Id.*  It involves the "determination of whether liability should attach as a matter of law given the existence of cause in fact," *Hartley v. State*, 103 Wn.2d 768, 698 P.2d 77, 83 (Wash.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

21

1985). "Unlike factual causation, legal causation 'hinges on principles of responsibility, not

physics.'" *Id.*  In *Beard*, the strict liability claims against the defendant motor bike manufacturer

were dismissed as the proximate cause of the harm was the failure of the children to abide by the

stop signs and heed their parents' warnings not to drive on the street which lead to the collision with

a truck. *Id.* at 1138.

In the present case, it is an undisputed fact that Plaintiff drafted sections of the escrow

instructions as it was "critical" he had final control of every dollar until he gave written permission

to the escrow agent to release it. (Def. Trial Ex. A, Escrow Instructions)  He relayed to the escrow

officer that he insisted his directions be meticulously followed.  (Def. Trial Ex. I). Yet, in direct

contravention of the escrow instructions, he released the funds out of escrow <u>without</u> a copy of the

Commitment to Lend being deposited into escrow for the Financial Opportunity. (Def. Trial Ex. A,

Escrow Instructions)  He later filed a complaint against CES claiming it was Ms. Hardstone's fault

no Commitment to Lend was deposited.  He could have insisted the SBLC be deposited into escrow

before releasing the escrow funds as would customary in a traditional escrow.  However, as of

March 1, 2011, Plaintiff will testify he did not care about these formalities as he had the Bakshi and

Wlodarczyk Guaranties to protect and indemnify him from any risk.

Similarly, his colleague Jamieson in dropping out of the deal at the end of 2010, warned him,

"as he had been telling me for a long time", that unless you had the right players, "the risk of loss

was great." (Def. Trial Ex. T, p. 120)  Plaintiff than proceeded to ignore his warnings and enter into

the Financing Opportunity without knowing Bakshi, Anthonysamy, Russell, Wlodarczyk, Hardstone

or Johnson.

The loss of the escrow funds was the failure of Plaintiff to abide by the language of the

escrow instructions he drafted, or, require the SBLC be deposited into escrow.  Either event would

have forced Anthonysamy to perform.  If Anthonysamy did not perform, <u>Plaintiff had the last word</u>

on the release of the escrow funds.   He failed to heed his colleagues' warnings by doing a deal with

people he did not know and he released the funds based on his irrational belief that the guaranties

removed his risk from the Financial Opportunity.  Having never asked either Wlodarczyk or Bakshi

22

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

for financial disclosures, his belief the guaranties ameliorated his risk is even more mystifying.

Plaintiff or CES was the proximate cause of the harm.

## VI.

## <u>ISSUES WITH EVIDENCE</u>

**A.**    <u>Application of the Adverse Inference Doctrine</u>

A party's failure to produce evidence which, under the circumstances would be expected, leads to an inference that the evidence not produced would not have buttressed the party's position and indeed would have undercut it.  *In re Bruce,* 2005 Bankr. LEXIS 3085, *45 (Bankr. Mon. 2005), citing to *Golden State Bottling Co. v. NLRB,* 414 U.S. 168, 174, 94 S.Ct. 414, 420, 38 L.Ed.2d 388 (1973); See also *P.R. Mallory Co. v. NLRB,* 400 F.2d 956, 959 (7th Cir.1968), cert. denied, 394 U.S. 918, 89 S.Ct. 1191, 22 L. Ed. 2d 432, 22 L.Ed.2d 452 (1969) "[F]ailure to produce evidence, which under the circumstances would be expected, gives rise to a presumption against the party failing to produce it.").  The adverse inference rule is triggered by the failure of a party to provide evidence peculiarly available to that party and supports an inference that the truth would be damaging to that party. *Gonzales v. Albuquerque Tortilla Co. (In re Furrs Supermarkets, Inc.),* 2008 Bankr. LEXIS 946,*26 (Bankr. N.M. 2008) citing to *Deutsche Financial Services Corp. v. Osborne (In re Osborne),* 257 B.R. 14, 19, n.7 (Bankr. C.D. Cal. 2000).

In the present case, Plaintiff admits in the Pre-Trial Order that someone other than himself wired the funds into escrow.  (PTO, See AA, p. 7)  Plaintiff claims it was from Mr. Ashworth and "one of his business accounts", and he repaid Mr. Ashworth €150,000 shortly thereafter".  (PTO, See AA, p. 7)  Defendant sought during discovery all documents which evidence or support Plaintiff deposited €300,000 into escrow, [5]  and all documents exchanged between Plaintiff and Mr. Ashworth relating to the transaction pled in the Complaint.[6]  Plaintiff produced no loan agreement between Plaintiff and Ashworth, no checks, bank statements, or other evidence of payment by Plaintiff to GeoXplor or to Mr. Ashworth. In the PTO, Plaintiff references as evidence only the testimony of Plaintiff Chiekes to support the claim. (PTO, p. 7, AA)  Plaintiff cannot

---

[5] (Def. Trial Ex. DD, #35); "All DOCUMENTS which support, or evidence, YOU deposited €300,000 into escrow".
[6] (Def. Trial Ex. DD, #26); "Any and All DOCUMENTS which YOU sent to or received from Clive Ashworth RELATING to the TRANSACTION.

23

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

substantiate with evidence a payment from himself to GeoXplor or to Ashworth for that matter. It would be expected that if he did in fact pay GeoXplor or Ashworth the monies (or in the amount he claimed) there would be financial records specific to the claim. The adverse inference rule is properly applied to these facts not only because it is perplexing why Plaintiff cannot come forth with such evidence, but because the PTO demonstrates Plaintiff did not deposit the funds into escrow and has not been personally harmed. The explanation now proffered, that Plaintiff paid monies on account of the Financial Opportunity, either personally or from one of his businesses, the amount and to whom he paid, is an issue clearly under his control. If he made no payment, a business made the payment, or paid one other than GeoXplor, he has not sustained personal injury. After two years of dodging a direct question, an adverse inference is proper.

## VII.

## CONCLUSION

Based on the foregoing, Defendant respectfully requests that Court enter judgment in its favor dismissing the Complaint with prejudice, and granting such other and further relief as is proper.

Dated:    November 8, 2022

PACHULSKI STANG ZIEHL & JONES LLP

By

Jeffrey P. Nolan (CA Bar No. 158923)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California  90067-4100
Telephone: 310/277-6910
Facsimile:  310/201-0760

*Attorneys for Defendant, Shaman Bakshi*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

24

DOCS_LA 345931 v8 05233.004

# EXHIBIT A

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NEWMEYER & DILLION LLP
J. NATHAN OWENS, CBN 198546
AMTOJ S. RANDHAWA, CBN 301360
895 Dove St., Fifth Floor
Newport Beach, California 92660
(949) 854-7000 / (949) 854-7099 (Fax)
Nathan.Owens@ndlf.com
Amtoj.Randhawa@ndlf.com

Attorneys for Plaintiffs
STEPHEN CHEIKES, an individual; and THE
STORYTELLERS GROUP ENTERPRISES CO., a
Canadian corporation

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re:<br><br>SHAMAN BAKSHI,<br><br>      Debtor.<br>―――――――――――――――――<br>STEPHEN CHEIKES, an individual; and THE STORYTELLERS GROUP ENTERPRISES CO., a Canadian corporation;<br><br>      Plaintiffs,<br><br>      v.<br><br>SHAMAN BAKSHI,<br><br>      Defendant. | BK. CASE NO.:    2:18-BK-14672-VZ<br>ADV. CASE NO.:   2:18-AP-01235-VZ<br>JUDGE:        Hon. Vincent P. Zurzolo<br><br>**PRE-TRIAL STIPULATION FOR CLAIMS FOR RELIEF**<br><br>Date:     July 23, 2020<br>Time:    11:00 a.m.<br>Place:   Courtroom 1368<br>        Roybal Federal Building<br>        255 E. Temple St.<br>        Los Angeles, CA 90012 |

**PRE-TRIAL STIPULATION**

    Stephen Cheikes, an individual, and The Storytellers Group Enterprises Co., a Canadian Corporation, plaintiffs in this adversary proceeding ("Plaintiff"[1]) and Shaman Bakshi, defendant in this adversary proceeding ("Defendant") submit the following Pre-Trial Stipulation through their respective counsels pursuant to Local Bankruptcy Rule 7016-1(b)(2).

―――――――――――――――――

[1] Because Mr. Cheikes is the sole owner and member of The Storytellers Group Enterprises Co., both plaintiffs shall collectively be referred to as "Plaintiff."

NEWMEYER<br>DILLION

I.  **UNDERLYING ISSUES OF FACT COMMON TO ALL CLAIMS FOR RELIEF**

A.  Defendant filed a petition for relief under Chapter 7 on April 24, 2018.

**Not Contested**.

B.  Plaintiff commenced this adversary proceeding by filing a complaint on July 23, 2018.

**Not Contested**.

C.  Defendant filed his amended answer to the complaint in this adversary proceeding on December 21, 2018.

**Not Contested**.

D.  The Storytellers Group Enterprises Co. ("TSG") is a company solely owned and controlled by Stephen Cheikes.

**Not Contested**.

E.  In or about October 2010, Plaintiff and Defendant were introduced by a mutual acquaintance, Janet Holman.

**Not Contested**.

F.  On October 27, 2010, Plaintiff and Garry Jamieson met Defendant at the Four Seasons Hotel in Westlake Village, CA.

**Not Contested**.

G.  Defendant introduced Plaintiff to Richard Charles Wlodarczyk, III ("Wlodarczyk"), of Creative Financial Resources, LLC ("CFR").

**Not Contested**.

H.  The proposed transaction at issue in this adversary involved the issuance of a €50 Million Standby Letter of Credit ("SBLC") issued by HSBC Bank (UK) ("HSBC") to North American Conveyor Company ("NACC"), a Panamanian Company (the "Transaction").

**Not Contested**.

I.  By the terms, the SBLC was to be returned in full to HSBC within one year and a day.

**Not Contested**.

1    J.    The Transaction was brought to Plaintiff by Wlodarczyk and Brad Russell

2    ("Russell") of CFR.

3         **Contested**.

4              <u>Plaintiff</u>: Defendant, not Wlodarczyk or Russell, brought the Transaction to

5    Plaintiff.

6                   Evidence:

7                   Testimony of Stephen Cheikes, Wlodarczyk, and Defendant; and

8                   Exhibits 1-8, 9, 20.

9              <u>Defendant</u>: Wlodarczyk and Russell, brought the proposed Transaction to

10   Plaintiff.

11                  Evidence:

12                  Testimony of Stephen Cheikes;

13                  Testimony of Antoinette Hardstone;

14                  Exhibits A-I.

15   K.    Plaintiff never met Wlodarczyk or Russell at any point before or during the

16   Transaction.

17        **Not Contested**.

18   L.    Plaintiff did not conduct any investigation of Wlodarczyk or Russell.

19        **Contested**.

20             <u>Plaintiff</u>: Plaintiff conducted due diligence on Wlodarczyk, Russell, and

21   CFR to the best of his ability.

22                  Evidence:

23                  Testimony of Stephen Cheikes, Antoinette Hardstone, and

24                  Wlodarczyk; and

25                  Exhibits 16-18, 25.

26             <u>Defendant</u>: The fact is accurate as stated.

27                  Evidence:

28                  Testimony of Stephen Cheikes.

NEWMEYER
DILLION

M.    Garry Jameson determined he did not want to be part of the Transaction.

**Not Contested.**

N.    After Garry Jameson withdrew from consideration, Plaintiff determined he would move forward instead.

**Not Contested.**

O.    The Transaction contemplated €300,000 to be placed into escrow.

**Not Contested.**

P.    The €300,000 would be used to finance issuance of the SBLC.

**Not Contested.**

Q.    The Transaction contemplated a €50 Million SBLC to be used as collateral by NACC to draw down on its line of credit with HSBC to issue a €20 Million nonrecourse loan to Plaintiff.

**Not Contested.**

R.    NACC was to act as the beneficiary for the SBLC in favor of TSG, and indemnify HSBC.

**Not Contested.**

S.    Plaintiff had no knowledge of any collateral being pledged to HSBC for the loan.

**Not Contested.**

T.    Plaintiff required Defendant to indemnify him against any loss of any portion of the €300,000.

**Contested.**

Plaintiff: Plaintiff repeatedly advised Defendant that before Plaintiff would agree to invest any monies into the Transaction, Defendant would have to indemnify Plaintiff against any loss of the €300,000 Plaintiff was being asked to invest. Plaintiff also required Defendant to execute personal and corporate guarantees indemnifying Plaintiff against any risk of loss of the €300,000 Plaintiff was investing and promising to repay Plaintiff any portion of the €300,000 that was lost if the Transaction was not successful, for any reason.

///

NEWMEYER DILLION

Evidence:

Testimony of Stephen Cheikes, Defendant, Wlodarczyk; and

Exhibits 7-20, 23-25.

Defendant: Plaintiff personally invested no monies and suffered no loss. Plaintiff was not a party to the Transaction as evidenced from the escrow documents. Plaintiffs' last minute interest in indemnity agreements was effectuated with forged signatures. No indemnity agreement was deposited into escrow.

Evidence:

Testimony of Stephen Cheikes, Defendant and Antoinette Hardstone; and

Exhibit A-I, EE, FF, QQ and PP.

U.     On February 23, 2011, Defendant executed a document entitled "Distribution of Proceeds and Personal Guarantee Agreement."

**Contested**.

Plaintiff: After extensive negotiations, Defendant executed the first guarantee entitled "Distribution of Proceeds and Personal Guarantee Agreement" on February 23, 2011 and sent an executed copy of same to Plaintiff via e-mail.

Evidence:

Testimony of Stephen Cheikes, Defendant, and Wlodarczyk; and

Exhibits 7-15,17.

Defendant: Plaintiff drafted the Distribution of Proceeds and Personal Guarantee Agreement but does not recall an original and did not produce the original in response to discovery in the Adversary. Plaintiff did not deposit the Distribution of Proceeds and Personal Guarantee Agreement into escrow and the signatures on the various pages are images lifted or pasted from a copy.

Evidence:

Testimony of Stephen Cheikes and Antoinette Hardstone;

Exhibits X, Y, Z, EE and OO.

- 5 -

1      V.    On February 23, 2011, escrow was opened with Commercial Escrow Services and

2  Antoinette ("Toni") Hardstone appointed as the escrow officer for the Transaction.

3             **Not Contested.**

4      W.    Toni Hardstone worked on earlier holding escrows with CFR, Wlodarczyk,

5  Russell, and Mr. Sabastian Anthonysamy ("Anthonysamy").

6             **Not Contested.**

7      X.    Toni Hardstone had never done any prior financial transactions with Plaintiff or

8  Defendant.

9             **Not Contested.**

10      Y.    On February 25, 2011, Plaintiffs entered into an Escrow Agreement with

11  Anthonysamy.

12             **Not Contested.**

13      Z.    On February 25, 2011, Anthonysamy deposited a Pay Order Request into escrow

14  requiring the escrow funds to be disbursed as follows: (a) €200,000 to Anthonysamy, (b) €80,000

15  to CFR, and (c) €20,000 to ADPF Investments PTE, Ltd.

16             **Contested.**

17             <u>Plaintiff</u>: Although the document entitled "Pay Order Request" is dated

18  February 25, 2011, plaintiff was not aware that this document was deposited into escrow. Indeed,

19  Plaintiff first became aware of this document and the payouts listed therein after the Transaction

20  had failed and Wlodarczyk and Defendant refused to honor their guarantees and return Plaintiff's

21  €300,000 investment.

22                      Evidence:

23                      Testimony of Stephen Cheikes.

24             <u>Defendant</u>: The fact stated is accurate.

25                      Evidence:

26                      Testimony of Stephen Cheikes and Antoinette Hardstone

27                      Exhibit D

28    ///

NEWMEYER
DILLION

Case 2:18-ap-01235-VZ    Doc 121    Filed 07/09/20    Entered 07/09/20 16:43:25    Desc
Main Document    Page 7 of 30

1        AA.    On February 28, 2011, Plaintiff and his business partner, Clive Ashworth, wired

2    €300,000 into escrow.

3        **Contested**.

4        Plaintiff: Mr. Cheikes and Clive Ashworth were partners in the

5    Transaction. Pursuant to an agreement between the parties, Mr. Ashworth wired the €300,000

6    from one of his business' accounts, and Mr. Cheikes repaid Mr. Ashworth €150,000 shortly

7    thereafter.

8        Evidence:

9        Testimony of Stephen Cheikes.

10        Defendant: There is no evidence to support Plaintiff Cheikes paid any sum,

11    into escrow, or repaid any sum on account of the Transaction.  On February 28, 2011, Geoxplor

12    Corp., a mining company with no connection to the Plaintiffs, wired $427,950 to Commercial

13    Escrow Services, Inc.  Though specifically asked in discovery, Plaintiffs have refused to produce

14    documents evidencing any deposit of funds by Plaintiffs, any partnership agreement or an

15    agreement to have a third party corporation (Geoxplor) fund the Transaction, any

16    communications about repayment, or any financial documentation evidencing proof of repayment

17    by Plaintiffs.  Plaintiff refused to produce any minutes, articles of incorporation or by-laws to

18    evidence the Plaintiff, or the Storytellers Group, paid back any sum to Ashworth let alone

19    Geoxplor.

20        Evidence:

21        Testimony of Stephen Cheikes; and

22        Exhibits H, EE (Req. Prod. #26, 27, 35) FF, (Req. Prod. #26, 27,

23        35) and JJ.

24        BB.    Plaintiff modified the escrow instructions to require, among other things, his

25    verbal and written authorization to release any part of the €300,000 being held in escrow.

26        **Not Contested**.

27        CC.    On March 1, 2011, Plaintiff was advised that the SBLC was ready to be issued.

28        **Contested**.

NEWMEYER
DILLION

1   <u>Plaintiff</u>: The fact is accurate as stated.

2   Evidence:

3   Testimony of Stephen Cheikes, Defendant, and Wlodarczyk; and

4   Exhibits 17, 18.

5   <u>Defendant</u>: Plaintiff claims he was advised by Wlodarczyk on March 1,

6   2011, that the SBLC had issued, but Plaintiff needed only to check with the escrow officer to

7   receive confirmation of the issuance of the SBLC, or with NACC, who was the beneficiary acting

8   on behalf of Plaintiff. Rather, Plaintiff, an experienced lawyer, negotiated a convoluted

9   transaction and released the escrow funds without exercising any diligence to confirm issuance of

10  the SBLC.

11  Evidence:

12  Testimony of Stephen Cheikes; and

13  Exhibits A-I.

14  DD.    On March 1, 2011, Plaintiff gave authorization to release the €300,000 being held

15  in escrow.

16  **Contested**.

17  <u>Plaintiff</u>: After being advised that the SBLC was ready to be issued,

18  Plaintiff gave the necessary authorization to release the €300,000 being held in escrow

19  Evidence:

20  Testimony of Stephen Cheikes, Defendant, and Wlodarczyk; and

21  Exhibits 17, 18.

22  <u>Defendant</u>: Plaintiff claims he was advised by Wlodarczyk on March 1,

23  2011, that the SBLC had issued and that he gave his authorization to release the funds in escrow.

24  Evidence:

25  Testimony of Stephen Cheikes; and

26  Exhibits A-I.

27  EE.    Between March 1, 2011 and March 10, 2011, Plaintiff was advised that he would

28  have to indemnify the full value of the SBLC (i.e. €50,000,000) before the Transaction could

- 8 -

1  proceed.

2  **Contested**.

3  <u>Plaintiff</u>: After Plaintiff had released the monies in escrow, Plaintiff was

4  advised, for the first time, that he would have to indemnify the full value of the SBLC (i.e.

5  €50,000,000) before the Transaction could proceed

6  Evidence:

7  Testimony of Stephen Cheikes, Defendant, Wlodarczyk; and

8  Exhibit 18.

9  <u>Defendant</u>: Wlodarczyk allegedly stated on March 9, 2011, that Plaintiff

10  would have to indemnify the full value of the SBLC (i.e. €50,000,000) before the Transaction

11  could proceed which Plaintiff had no intention of doing since he did not intend to pay back the

12  monies.

13  Evidence:

14  Testimony of Stephen Cheikes; and

15  Exhibit R.

16  FF.    On or about March 10, 2011, Defendant executed a document entitled "HSBC

17  Bank (UK) Standby Letter of Credit Issuance Agreement"

18  **Contested**.

19  <u>Plaintiff</u>: Because Plaintiff's involvement in the Transaction was limited to

20  funding the processing costs of the SBLC, Plaintiff was to have no risk in the Transaction.

21  Defendant guaranteed, in writing, that Plaintiff would have no risk of loss of the €300,000

22  investment.  Defendant agreed to indemnify Plaintiff against the loss of the €300,000 investment

23  if the Transaction was unsuccessful, for any reason. The request for Plaintiff to indemnify the

24  entire Transaction was a material change to the parties' agreement.  Defendant subsequently

25  agreed to indemnify the Transaction in exchange for a larger share of the loan proceeds. On or

26  about March 10, 2011, Defendant executed a Transaction-related document entitled "HSBC Bank

27  (UK) Standby Letter of Credit Issuance Agreement" substituting his closely-held company, Fade

28  to Black Entertainment, Inc. (FTB") , in place and instead of TSG for all intents and purposes in

- 9 -

1  the Transaction.

2                          Evidence:

3                          Testimony of Stephen Cheikes, Defendant, and Wlodarczyk; and

4                          Exhibits 18-25.

5            Defendant: Escrow closed on March 1, 2011 once the funds were released.

6  Defendant did not execute the HSBC Standby Letter of Credit Issuance Agreement as it contains

7  the same forged or imaged signature appearing on multiple other documents. Defendant received

8  no monies disbursed out of escrow and Plaintiff and Wlodarczyk actively tried to change the

9  Transaction.

10                         Evidence:

11                         Testimony of Defendant and Toni Hardstone; and

12                         Exhibits A-I, OO, and QQ.

13        GG.    On March 11, 2011, Defendant executed a document entitled "Agreement to

14  Facilitate Loan Transaction."

15        **Contested**.

16                         Plaintiff: Because Defendant's company, FTB, was being substituted in as

17  the beneficiary of the SBLC, and now guaranteeing the entire Transaction, Defendant wanted a

18  larger percentage of the proceeds from the Transaction. As such, the parties executed a revised

19  agreement and guarantee entitled "Agreement to Facilitate Loan Transaction" on March 11, 2011.

20                         Evidence:

21                         Testimony of Stephen Cheikes, Defendant, and Wlodarczyk; and

22                         Exhibits 18-25.

23                         Defendant: Escrow closed on March 1, 2011 once the funds were released

24  by Plaintiff. Defendant did not execute the Agreement to Facilitate Loan Transaction which

25  contains the same forged or imaged signature appearing on multiple other documents.   Defendant

26  received no monies disbursed out of escrow.

27                         Evidence:

28                         Testimony of Defendant, Toni Hardstone; and

NEWMEYER
DILLION

1    Exhibits A-I, OO, and QQ.

2    HH.    On March 17, 2011, Defendant executed a document entitled "CONFIRMATION

3    OF CREDIT LINE/FACILITY."

4    **Contested**.

5    Plaintiff: In furtherance of FTB substituting in as the beneficiary to the

6    Transaction, Defendant executed a "CONFIRMATION OF CREDIT LINE/FACILITY" before a

7    notary public in Orange County, California on March 17, 2011.

8    Evidence:

9    Testimony of Stephen Cheikes and Rajendar Amin; and

10    Exhibits 26-27.

11    Defendant: Escrow closed on March 1, 2011 when the funds were released

12    by Plaintiff. Defendant did not execute the CONFIRMATION OF CREDIT LINE/FACILITY

13    which contains the same forged or imaged signature appearing on multiple other documents.

14    Defendant was not a party to the Transaction and received no monies disbursed from escrow.

15    Evidence:

16    Testimony of Defendant and Toni Hardstone; and

17    Exhibits A-I, OO, and QQ.

18    II.    On April 5, 2011, Defendant and Plaintiff requested a refund of the €300,000 from

19    Anthonysamy.

20    **Contested**.

21    Plaintiff: On April 5, 2011, Plaintiff demanded that Anthonysamy

22    immediately refund the €300,000 that were released. On the same date, Defendant also demanded

23    that Anthonysamy return the monies to Plaintiff.

24    Evidence:

25    Testimony of Stephen Cheikes, Defendant, Wlodarczyk; and

26    Exhibits 28, 29.

27    Defendant: Defendant did not execute the Letter dated April 5, 2011, which

28    contains the same forged or imaged signature appearing on multiple other documents. Defendant

NEWMEYER
DILLION

- 11 -

1   was not a party to the Transaction and received no monies disbursed out of escrow.

2                              Evidence:

3                              Testimony of Defendant, and Toni Hardstone; and

4                              Exhibits A-I, OO, and QQ.

5        JJ.    On April 29, 2011, Plaintiff demanded that Defendant return the €300,000 Plaintiff

6   invested.

7        **Contested**.

8              **Plaintiff**: Plaintiff demanded that Defendant perform under the terms of the

9   personal and corporate guarantees and return the €300,000 Plaintiff had invested.

10                             Evidence:

11                             Testimony of Stephen Cheikes, Defendant, Wlodarczyk; and

12                             Exhibits 32.

13             Defendant: Defendant did not execute personal or corporate guarantees in

14  favor of Plaintiff.  Plaintiff never investigated Defendant's financial condition, net worth or ask

15  for any supporting documents to support the allegation he pursued a guarantee.

16                             Evidence:

17                             Testimony of Defendant, Stephen Cheikes and Toni Hardstone; and

18                             Exhibits Z and OO.

19       KK.    After the Transaction failed, Defendant attempted to effectuate other financial

20  transactions to repay Plaintiff.

21       **Contested**.

22             Plaintiff: Defendant attempted to salvage the Transaction and develop a

23  way to make the Transaction successful. Defendant also, with the assistance of Wlodarczyk,

24  attempted to effectuate similar financial transactions in an effort to raise the money needed to

25  repay Plaintiff €300,000 pursuant his personal and corporate guarantees. Defendant also

26  attempted to use other, non-Transaction type deals to repay Plaintiff.

27                             Evidence:

28                             Testimony of Stephen Cheikes, Defendant, Wlodarczyk, Jon Orban;

- 12 -

1    Exhibits 29-45.

2    Defendant: The statement is argument of counsel and not a core or

3    underlying fact.  The generalized statement of counsel is not relevant to the Transaction and is

4    hearsay.

5    Evidence:

6    Testimony of Stephen Cheikes, Defendant; and

7    Exhibits Z and OO.

8    LL.    Defendant received none of the monies disbursed out of escrow with respect to the

9    Transaction.

10    **Not Contested**.

11    MM.    On May 14, 2012, Plaintiff obtained a judgment against Anthonysamy.

12    **Not Contested**.

13    NN.    Plaintiff collected $40,000 USD from Anthonysamy in satisfaction of the

14    judgment.

15    **Not Contested.**

16    OO.    On March 15, 2013, Plaintiff filed a complaint against Defendant in Orange

17    County Superior court in a case styled *The Storytellers Group Enterprises Co. et al. v. Shaman*

18    *Bakshi et al.* (Case No. 30-2013-00637770-CU-BC-CJC) ("State Court Action").

19    **Not Contested.**

20    PP.    On January 13, 2015, the court entered a default judgment in favor of Plaintiffs

21    and against Defendant and FTB in the State Court Action in the amount of $567,167.00 (the

22    "Default Judgment").

23    **Not Contested.**

24    QQ.    Plaintiff has recovered monies from Wlodarczyk as a result of a settlement

25    Plaintiff reached with Wlodarczyk in the State Court Action.

26    **Not Contested.**

27    RR.    Defendant has not repaid Plaintiff any portion of the €300,000 invested in the

28    Transaction.

NEWMEYER
DILLION

1    **Not Contested.**

2    **II.    CLAIM FOR RELIEF**

3    The debt should not be discharged because the debt was for money which was obtained by

4    actual fraud. (523(a)(2)(A).

**ELEMENTS OF CLAIM**

6    a. <u>Defendant made representations to Plaintiff.</u>

7    **Contested**

8    <u>Plaintiff</u>: Throughout the negotiations of the Transaction, Defendant made

9    multiple verbal and written representations to Plaintiff regarding: 1) financial acumen, 2) his

10    work experience, 3) his familiarity with and involvement in transactions similar to the

11    Transaction, 4) his prior business dealings with the individuals involved in the Transaction, 5) his

12    ability to repay Plaintiff if the Transaction failed, and 6) his ability to repay Plaintiff €300,000

13    within five business days of the Transaction failing. Defendant also executed multiple personal

14    and corporate guarantees promising to indemnify Plaintiff against any risk of loss and promising

15    to repay Plaintiff the €300,000 if the Transaction failed.

16    <u>Evidence:</u>

17    Testimony of Stephen Cheikes, Wlodarczyk, Defendant; and

18    Exhibits 3-4, 7-10, 13, 14, 16, 17, 19-21, 25.

19    <u>Defendant</u>:  Plaintiff contends misrepresentations were made to him but

20    Plaintiff fails to identify the specific misrepresentations of fact as required by this element of the

21    cause of action. *Berr v. FDIC (In re Berr)*, 172 B.R. 299(9th Cir. BAP, 1994) Plaintiff cites a

22    single introductory meeting of the parties at the Four Seasons Hotel on October 27, 2010, but no

23    factual averment is made and  Plaintiff responded in discovery, "Responding Party cannot recall

24    the details or specifics of the prior transactions discussed at the meeting". Items (1)-(4) are

25    general assertions not a representation of fact and too vague for Defendant to marshal evidence

26    for a response.

27    As to Items (5)-(6), by Order dated October 24, 2019, the Court ruled that  .

28    . . the miscellaneous representations ("Miscellaneous Representations") and (2) Debtor's alleged

NEWMEYER
DILLION

1  execution of the Distribution of Proceeds and Personal Guarantee Agreement (the "Bakshi

2  Guarantee") cannot form the basis of a claim for relief under 523(a)(2)(B) and stating a claim for

3  nondischargeability under 523(a)(2)(A) requires a showing that that Debtor made representations

4  to plaintiff, *other than about Debtors financial condition*, that Debtor knew were false at the time

5  the representations were made, … [Dkt. No. 93], parag. 18 & 19.  Plaintiff alleges the Defendant

6  misrepresented his "ability to pay", i.e. his financial condition, which is outside the purview of

7  523(a)(2)(A).

8              Evidence:

9              Testimony of Stephen Cheikes, Defendant, and Antoinette

10             Hardstone; and

11             Exhibits A-I, MM, NN and Z.

12       b.   Defendant knew that the representations were false when made.

13           **Contested**

14           Plaintiff: Defendant knew that his representations were false at the time

15  they were made because Defendant did not have experience with similar transactions, Defendant

16  did not have prior business dealings with the parties involved in the Transaction, Defendant did

17  not have the financial ability to repay Plaintiff €300,000 within five business days of the

18  Transaction failing, and Defendant did not intend to honor the personal and corporate guarantees

19  he made to Plaintiff.

20             Evidence:

21             Testimony of Stephen Cheikes, Wlodarczyk, Defendant; and

22             Exhibits 31-42.

23           Defendant. Plaintiff contends misrepresentations were made to him but

24  Plaintiff fails to identify the specific misrepresentations of fact as required by this element of the

25  cause of action. *Berr v. FDIC (In re Berr)*, 172 B.R. 299(9th Cir. BAP, 1994) Section

26  523(a)(2)(A) requires a showing that the Debtor made misrepresentations to Plaintiff, other than

27  about the Debtor's financial condition, that the Debtor knew were false at the time the

28  representations were made.  Plaintiff alleges there were misrepresentations at a meeting parties at

- 15 -

1    the Four Seasons Hotel on October 27, 2010, but Plaintiff cannot allege the transactions or

2    business dealings Plaintiff claims the Defendant stated because Plaintiff cannot recall the details

3    or specifics of those transactions.

4                           Evidence:

5                           Testimony of Stephen Cheikes, Wlodarczyk, Defendant; and

6                           Exhibits A-G, MM, NN.

7          c. <u>Defendant made the representation with the intent to deceive.</u>

8              **Contested**

9               <u>Plaintiff</u>: Defendant made the representations with the intent to deceive

10    because Defendant needed Plaintiff to invest the €300,000 for the Transaction to proceed. If

11    successful, Defendant would have received over €2,900,000 without having invested a single

12    penny of his own money. For this reason, Defendant made multiple, material misrepresentations

13    to Plaintiff, so that Plaintiff would agree to invest money in the Transaction and Defendant could

14    reap the rewards.

15                           Evidence:

16                           Testimony of Stephen Cheikes, Wlodarczyk, Defendant; and

17                           Exhibits 3-4, 7-10, 13, 14, 16, 17, 19-21, 25.

18               <u>Defendant</u>:  What are the "multiple material misrepresentations"?  Plaintiff

19    contends misrepresentations were made to him but Plaintiff fails to identify the specific

20    misrepresentations of fact as required by this element of the cause of action. *Berr v. FDIC (In re*

21    *Berr)*, 172 B.R. 299(9th Cir. BAP, 1994) There are no documents deposited into escrow to

22    corroborate Plaintiff's assertion that funds were to be realized or paid to Defendant. Plaintiff has

23    abandoned their allegations that Defendant realized any of the monies deposited into escrow.

24    There is no evidence to support an intent by Defendant to procure the funds deposited by

25    Geoxplor.

26                           Evidence:

27                           Testimony of Stephen Cheikes, Wlodarczyk, and Defendant; and

28                           Exhibits A-G.

NEWMEYER
DILLION

d. <u>Plaintiff justifiably relied on the representation.</u>

**Contested**

<u>Plaintiff</u>: Plaintiff was justified in relying on Defendant's representations because Defendant held himself out to be a sophisticating finance professional with experience in similar transactions. Defendant also knew that Plaintiff's friend, Gary Jameson, was involved in similar transactions. Plaintiff conducted due diligence on Defendant, and Plaintiff's due diligence confirmed that Defendant was a sophisticated finance professional. Plaintiff was also justified in relying on Defendant's representations because Defendant was indemnifying Plaintiff against any loss of the monies invested, not that the Transaction would be successful and pay monies to Plaintiff. Plaintiff understood that his only risk was whether the Transaction would be successful and whether Plaintiff would realize a return from the Transaction. Defendant assured Plaintiff that there was no risk of losing the invested monies because the monies would only be released from escrow once the Transaction was ready to be successfully completed.

Evidence:

Testimony of Stephen Cheikes, Wlodarczyk, Defendant, and Antoinette Hardstone; and

Exhibits 1-4, 6-17, 19-21, 25.

<u>Defendant</u>: Plaintiff has not identified the alleged misrepresentations of material fact. Plaintiff is a sophisticating lawyer experienced in the field of finance, former associate general counsel to 20th Century Fox Studios, former chief executive officer and President of Monarch Entertainment, Inc. and championed reverse tax credits as investment vehicles for the film industry in Canada. Plaintiff did not rely on any representations of Defendant but instead relied on the personal guarantee of Richard Wlodarczyk, and the alleged personal guarantee of Defendant under the unreasonable belief it would remove any risk in the Transaction. Plaintiff noticed the escrow documents were poorly drafted, but did not bother to conduct due diligence or meaningful due diligence on anyone involved in the Transaction. He released monies out of escrow to Sebastian Anthonysamy without checking to make sure escrow terms were satisfied. Plaintiff ignored warning signs of the questionability of the Transaction,

1    the inconsistencies in the documents, the fact the overall transaction and rate of return made no

2    sense such that and any reliance on an alleged representation of Defendant is not justifiable.

3                    Evidence:

4                    Testimony of Stephen Cheikes, Defendant and Antoinette

5                    Hardstone; and

6                    Exhibits A-G, I, and O.

7        e. Plaintiff was injured

8            **Contested**

9            Plaintiff: As a result of Defendant's misrepresentations and fraudulent

10   inducement, Plaintiff suffered in excess of $410,000 in economic damages.

11                   Evidence:

12                   Testimony of Stephen Cheikes, Wlodarczyk, and Defendant; and

13                   Exhibits 28-45

14           Defendant: There is no evidence that Plaintiff deposited any monies into

15   escrow. Monies were wired into escrow by Geoxplor Corp., a mining company. Neither

16   Plaintiffs Stephen Cheikes and/or Storytellers Group, did business with Geoxplor Corp.

17   Plaintiff admitted in written discovery responses on February 19, 2019, that at some

18   undetermined date he paid back Mr. Ashworth one-half of the funds; however, Plaintiff

19   produced no documents during discovery evidencing an agreement with Clive Ashworth,

20   banking records evidencing his payment of funds to Geoxplor. or Ashworth. Plaintiff's refusal

21   to produce documents and evidence on a prima facie element in order to create a question of

22   fact is improper. Plaintiff has not sustained his burden of proof on this element and the

23   adversary should be dismissed.

24                   Evidence:

25                   Testimony of Stephen Cheikes and Antoinette Hardstone;

26                   Exhibit H, X-Z, FF, and GG.

27   ///

28   ///

- 18 -

f. <u>Defendant's conduct was a proximate cause of the injury.</u>

**Contested.**

  <u>Plaintiff</u>: Defendant's conduct was the proximate cause of Plaintiff's damages because Plaintiff would have never invested any monies into the Transaction but for Defendant's written and verbal assurances, representations, and promises. Plaintiff first realized the Defendant's representations, assurances, and promises were false only after Plaintiff had invested in the Transaction.

  Evidence:

  Testimony of Stephen Cheikes, Wlodarczyk, and Defendant; and Exhibits 3-4, 7-10, 13, 14, 16, 17, 19-21, 25, 31-45.

  <u>Defendant</u>:  Plaintiff has not identified the factual representations to determine if alleged conduct of Defendant was the proximate cause of the damages Plaintiff sustained, if any.  Plaintiff was actively looking for an off book "creative financing" transactions with Gary Jamieson before he ever met Defendant.  Plaintiff conducted no independent investigation of Sebastian Anthonysamy, NACC, Brad Russell or Richard Wlodarczyk, the principals of Creative Financial Resources, LLC, or Commercial Escrow, Inc. Plaintiff admits he knew the Transaction was suspicious, saw red flags given the inaccuracies in the escrow documents and timing, as well as knew the Transaction was too good to be true, but he did not care as he stood to make millions from the investment.  Even though he altered the escrow instructions to unilaterally control all aspects of the close of escrow by verbal and written confirmation, he did not seek proof of issuance of the SBLC because he unreasonably believed the guarantees he insisted be executed insulated him for all loss or risk.  If Plaintiff had not unreasonably released the escrow funds, the harm would have been averted.

  Evidence:

  Testimony of Stephen Cheikes, Defendant, and Antoinette Hardstone;

  Exhibits A-G and Q-S.

///

1    **III.    REMEDIES**

2    A. Money Damages: By reason of Defendant's actions, Plaintiff has been damaged in the

3    sum of $410,000 plus 5% simple interest from and including March 1, 2011.

4    **Contested**

5    Plaintiff: Defendant has repaid Plaintiff no portion of the €300,000

6    (approximately $410,000) that Defendant induced Plaintiff to invest in the Transaction and

7    Defendant personally guaranteed.

8    Evidence:

9    Testimony of Stephen Cheikes, Wlodarczyk, and Defendant; and

10    Exhibits 3-4, 7-10, 13, 14, 16, 17, 19-21, 25, 31-45.

11    Defendant: Plaintiff did not deposit any monies into escrow or into the

12    Transaction.  Plaintiff has not been damaged.  Plaintiff did not sustain his burden of proof on

13    the element of damages though the evidence was clearly within his possession custody or

14    control.  There are no cancelled checks, wire, or bank statements to evidence Plaintiff's

15    investment.  There is no partnership agreement or evidence of repayment and there was no such

16    allegation in the Complaint.  There are no minutes, meeting of the board of directors, or any

17    reliable evidence of the investment by the corporation or of Plaintiff's involvement with

18    Geoxplor. Plaintiff's refusal to produce documents and evidence on a prima facie element of his

19    case-in-chief in order to create a question of fact is improper.  Plaintiff has not sustained his

20    burden of proof on this element and the adversary should be dismissed

21    Evidence:

22    Testimony of Stephen Cheikes, Defendant and Antoinette

23    Hardstone; and

24    Exhibits H, X-Z, EE (Req. # 26, 27, 35), FF (Req. # 26, 27, 35), JJ,

25    and GG.

26    **IV.    AFFIRMATIVE DEFENSES**

27    A.    **FIRST AFFIRMATIVE DEFENSE**: Failure to State a Cause of Action

28    Elements of Affirmative Defense: (1) the Defendant made . . . representations; (2)

NEWMEYER
DILLION

1  that at the time he knew they were false; (3) that he made them with the intention and purpose of

2  deceiving the creditor; (4) that the creditor relied on such representations; and (5) that the creditor

3  sustained the alleged loss and damage as the proximate result of the misrepresentations having

4  been made. *Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010).

5  **Contested** (see Plaintiff & Defendant's reference to 523(a)(2)(A) and

6  supporting evidence *supra*, as if incorporated herein.)

7  **B.   SECOND AFFIRMATIVE DEFENSE**: Collateral Estoppel

8  In light of the Courts October 24, 2019, Order Denying Summary Judgment and granting

9  Partial Summary Adjudication, Defendant abandons this affirmative defense at trial.

10  **C.   THIRD AFFIRMATIVE DEFENSE**:  Illegality.

11  Elements of the Affirmative Defense: (a) Plaintiff participated in a transaction, in

12  fact sought to fund it, that had at its purpose to obtain moneys from a financial institution by

13  means of false pretenses and/or dishonesty; (b) the object of the Distribution of Proceeds and

14  Personal Guarantee Agreement and Agreement to Facilitate Loan Transaction and Guarantee is

15  illegal, unlawful, and/or contrary to good morals.

16  **Contested**.

17  (a)   Plaintiff participated in a transaction, in fact sought to fund it, that had at

18  its purpose to obtain moneys from a financial institution that would never be repaid.

19  Defendant:  The proposed Transaction sought a €50 Million Standby Letter

20  of Credit to be issued by HSBC Bank, UK. to NACC, a Panamanian Company.  NACC would

21  then pay Plaintiff €20,000,000, as a nonrecourse loan. Plaintiff either invested the funds as he

22  claims to the Court, or utilized a straw-man Geoxplor. Corp., to fund the transaction, the evidence

23  suggests the Transaction was designed to leave the bank with an unpaid obligation.

24  Evidence:

25  Testimony of Stephen Cheikes and Defendant; and

26  Defendant's Exhibits A-I, Q, and S.

27  Plaintiff: There is no evidence that the Transaction was unlawful, illegal, or

28  unconscionable. Furthermore, Defendant solicited Plaintiff to participate in the Transaction,

1    Defendant executed personal and corporate guarantees to convince Plaintiff to invest in the

2    Transaction, and Defendant and Wlodarczyk were the principals in the Transaction. Based on

3    Defendant's representations regarding the Transaction, Plaintiff had no reason to believe the

4    Transaction was unlawful or illegal.

5                             Evidence:

6                             Testimony of Stephen Cheikes, Defendant, and Wlodarczyk; and

7                             Exhibits 1-27.

8               (b) The object of the Distribution of Proceeds and Personal Guarantee Agreement

9    and Agreement to Facilitate Loan Transaction and Guarantee is illegal, unlawful, and/or contrary

10   to good morals.

11              Defendant:  The €50 Million Standby Letter of Credit would be issued by

12   HSBC Bank, UK to NACC, a Panamanian Company, who would issue €20,000,000, on a

13   nonrecourse basis, to the Plaintiff.  Plaintiff had no knowledge of any collateral being pledged to

14   HSBC Bank, UK for this loan. The transaction had no required business purpose.  Plaintiff made

15   no effort to confirm whether a Panamanian Company, NACC, had a line of credit or the ability to

16   pay back HSBC Bank, UK.  Plaintiff had no intention of returning the €20,000,000, to NACC.

17   Plaintiff in sworn testimony stated he did not ask, and frankly did not care, if there was no ability

18   to pay HSBC Bank (UK), as he immediately intended to dissipate the funds.  The purpose and the

19   expressed intent was to leave a financial institution with a bad debt.

20                            Evidence:

21                            Testimony of Stephen Cheikes, pp. 153-154, lns. 17-2,  pp. 154, lns. 8-

22                            15, and Defendant; and

23                            Defendant's Exhibits A-I, Q, and S.

24              Plaintiff: There is no evidence that the Transaction was unlawful, illegal,

25   unconscionable, or "contrary to good morals." Furthermore, Defendant solicited Plaintiff to

26   participate in the Transaction, Defendant executed personal and corporate guarantees to convince

27   Plaintiff to invest in the Transaction, and Defendant and Wlodarczyk were the principals in the

28   Transaction. Based on Defendant's representations regarding the Transaction, Plaintiff had no

NEWMEYER
DILLION

1    reason to believe the Transaction was unlawful or illegal.

2    Evidence:

3    Testimony of Stephen Cheikes, Defendant, and Wlodarczyk; and

4    Exhibits 1-27.

5    **D.    FOURTH AFFIRMATIVE DEFENSE**: Unclean Hands

6    Elements of the Affirmative Defense: (a) Plaintiff engaged in a transaction which

7    had no legitimate business purpose and at its purpose sought to leave a multi-million dollar debt

8    uncollectible with a financial institution; (b) Plaintiff was aware the transaction was unreasonable

9    and unconscionable but simply did not care;  (c) The Distribution of Proceeds and Personal

10   Guarantee Agreement and Agreement to Facilitate Loan Transaction and Guarantee sought to

11   insure or indemnify Plaintiff from any liability or responsibility with the subject transaction; and

12   (d) Plaintiff executed Declarations under the laws of the State California and in response to

13   discovery in the present adversary that were not only inaccurate, but knowingly false.

14   **Contested**.

15   (a) The Transaction which Plaintiff actually pursued had no legitimate business

16   purpose.

17   Defendant:  For putting up €300,000 euros, a €50 Million Standby Letter of

18   Credit would be issued by HSBC Bank, UK to NACC, a Panamanian Company, who would issue

19   €20,000,000, on a nonrecourse basis, to the Plaintiff. Plaintiff had no knowledge of any collateral

20   being pledged to HSBC Bank, UK for this loan. The transaction had no required business

21   purpose. Plaintiff made no effort to confirm whether a Panamanian Company, NACC, had a line

22   of credit or the ability to pay back HSBC Bank, UK. The way the deal was to be structured, when

23   the loan was recalled (in a year and a day), HSBC Bank would have an action against NACC

24   only.  Upon issuance of the €20 Million draw down in funds from NACC, Plaintiff intended to

25   immediately dissipate the funds in short order.  Plaintiff did not ask, and frankly did not care, if

26   there was no ability to pay back HSBC Bank (UK).

27   Evidence:

28   Testimony of Stephen Cheikes, Antoinette Hardstone and

1         Defendant;

2         Defendant's Exhibits A-I, P, Q, R and S.

3         <u>Plaintiff</u>: Defendant solicited Plaintiff to participate in the Transaction,

4  Defendant executed personal and corporate guarantees to convince Plaintiff to invest in the

5  Transaction, and Defendant and Wlodarczyk were the principals in the Transaction. Based on

6  Defendant's representations to Plaintiff and Plaintiff's friend, Garry Jameson, Plaintiff

7  understood the Transaction to be legitimate, lawful, and one that could work if the right

8  circumstances and players were involved.

9         Evidence:

10         Testimony of Stephen Cheikes, Defendant, and Wlodarczyk; and

11         Exhibits 1-27

12         (b) Plaintiff was aware the Transaction was unreasonable and

13  unconscionable but simply did not care.

14         <u>Defendant</u>: Plaintiff had no knowledge of any collateral being pledged to

15  HSBC Bank, UK for this loan. The transaction had no required business purpose and the return

16  on investment did not make sense.  Plaintiff made no effort to confirm whether a Panamanian

17  Company, NACC, had a line of credit or the ability to pay back HSBC Bank, UK. The way the

18  deal was to be structured, when the loan was recalled (in a year and a day), HSBC Bank would

19  have an action against NACC only.  Upon issuance of the €20 Million draw down in funds from

20  NACC, Plaintiff intended to immediately dissipate the funds in short order.  Plaintiff did not ask,

21  and frankly did not care, if there was no ability to pay back HSBC Bank (UK).

22         Evidence:

23         Testimony of Stephen Cheikes, Antoinette Hardstone and Defendant; and

24         Defendant's Exhibits A-I, P, Q, R and S.

25         <u>Plaintiff</u>: There is no evidence that the Transaction was unreasonable or

26  unconscionable. Defendant solicited Plaintiff to participate in the Transaction, Defendant

27  executed personal and corporate guarantees to convince Plaintiff to invest in the Transaction, and

28  Defendant and Wlodarczyk were the principals in the Transaction. Based on Defendant's

- 24 -

1 representations to Plaintiff and Plaintiff's friend, Garry Jameson, Plaintiff understood the

2 Transaction to be legitimate, lawful, and one that could work if the right circumstances and

3 players were involved.

4            Evidence:

5            Testimony of Stephen Cheikes, Defendant, and Wlodarczyk; and

6            Exhibits 1-27.

7            (c) The Distribution of Proceeds and Personal Guarantee Agreement sought

8 to indemnify Plaintiff from any liability or responsibility with the Transaction.

9     Defendant:   Plaintiff drafted the Distribution of Proceeds and Personal Guarantee

10 Agreement. California Civil Code §1668 sets forth that "all contracts which have for their

11 object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful

12 injury to the personal property of another, or violation of law, whether willful or negligent, are

13 against the policy of the law". As alleged by Plaintiff, these guarantees shifted the risk of loss

14 from Plaintiff to the Defendant and others. Complaint [Dkt no. 1]; §30

15            Evidence:

16            Testimony of Stephen Cheikes, Antoinette Hardstone and

17            Defendant;

18            Defendant's Exhibits A-I, P, Q, R and S.

19     Plaintiff: Plaintiff made absolutely clear to Defendant that he would not invest a

20 single penny into the Transaction unless and until Defendant agreed to indemnify him against any

21 risk of loss of the €300,000 he was being asked to invest. Plaintiff further explained that the

22 aforementioned indemnification and guarantee were necessary before any further consideration

23 was given to the Transaction. Defendant understood and agreed to indemnify Plaintiff against any

24 risk of loss, so the Distribution of Proceeds and Personal Guarantee Agreement was drafted to

25 reflect this understanding between the parties.

26            Evidence:

27            Testimony of Stephen Cheikes, Defendant, and Wlodarczyk; and

28            Exhibits 7-15,17.

NEWMEYER
DILLION

1    (d) Plaintiff executed Declarations and Discovery responses under perjury and that

2    were not only inaccurate but knowingly false.

3    **Defendant:**    On March 15, 2013, Plaintiff stated to the California Superior

4    Court that, "On or about March 1, 2011, in accordance with the terms of the agreements between

5    the parties, Plaintiffs wire transferred 300,000 Euros to CES to be held in escrow". Later, in

6    support of the default judgment, Plaintiff submitted a Declaration under penalty of perjury where

7    he represented he, Stephen Cheikes, wire transferred €300,000 Euros to the Debtor's chosen

8    escrow company.  In the Wlodarczyk litigation, Plaintiff stated to the United States Bankruptcy

9    Court, Southern District, "I wired transferred the €300,000 requested by Wlodarczyk to

10    Commercial Escrow Services". The statements were knowingly false.  Plaintiff refused to

11    produce documents of his investment in this adversary and in Supplemental Interrogatory

12    Responses in this litigation, later admitted he provided only one-half of the funds. Even that claim

13    is suspect, as documents from the escrow transaction confirmed Geoxplor Corp., wired $427,950

14    to Commercial Escrow Services, Inc. on February 28, 2011.  No partnership documents were

15    produced by Plaintiff and no evidence of an investment or repayment.  At a minimum, Plaintiffs

16    are not the party-in-interest.

17    Evidence:

18    Testimony of Stephen Cheikes, Antoinette Hardstone and Defendant;

19    Defendant's Exhibits A-I, P, Q, R, W, X, Y, Z, EE (Req.# 26, 27, 35), and

20    FF.

21    **Plaintiff:** Mr. Cheikes and Clive Ashworth were partners in the

22    Transaction. Pursuant to an agreement between the parties, Mr. Ashworth wired the €300,000

23    from one of his business' accounts, and Mr. Cheikes repaid Mr. Ashworth €150,000 shortly

24    thereafter.

25    Evidence:

26    Testimony of Stephen Cheikes and Wlodarczyk.

27    **E.    FIFTH AFFIRMATIVE DEFENSE**: Lack of Proximate Cause

28    Elements of the Affirmative Defense: Liability cannot attach if the damages

1   sustained were otherwise inevitable or due to unrelated causes.

2                              **Contested**.

3          <u>Defendant</u>:  Plaintiff personally modified the escrow instructions to require

4   his verbal and written approval to release funds out of escrow, yet he did not confirm with the

5   escrow officer (a) the issuance of the SBLC, or the (b) deposit of the documents into escrow.

6   Plaintiff released the escrow funds despite the terms not being met.  Plaintiff agreed to an overly

7   complex transaction with people he did not know or meaningfully investigate.  The proximate

8   cause of the loss was Plaintiff's decision to not confirm escrow terms had been met.

9                              Evidence:

10                             Testimony of Stephen Cheikes and Antoinette Hardstone;

11                             Exhibits A-G and Q-S.

12         <u>Plaintiff</u>: Defendant's conduct was the proximate cause of Plaintiff's

13  damages because Plaintiff would have never invested any monies into the Transaction but for

14  Defendant's written and verbal assurances, representations, and promises. Plaintiff first realized

15  the Defendant's representations, assurances, and promises were false only after Plaintiff had

16  invested in the Transaction.

17                             Evidence:

18                             Testimony of Stephen Cheikes, Wlodarczyk, and Defendant; and

19                             Exhibits 3-4, 7-10, 13, 14, 16, 17, 19-21, 25, 31-45.

20  **V.     <u>EXHIBITS TO BE OFFERED BY EACH PARTY AND OBJECTIONS TO</u>**

21      <u>**EXHIBITS**</u>

22         **A.     PLAINTIFF'S EXHIBITS**: Plaintiff's Exhibits are attached to this order as

23  Appendix 1. Defendant stipulates to the admission and authenticity of the exhibits listed in

24  Appendix 1.

25         **B.     DEFENDANT'S EXHIBITS**: Defendant's exhibits are listed in and attached to

26  Appendix 2. Plaintiff stipulates to the admission and authenticity of the exhibits listed in

27  Appendix 2.

28         If there is a dispute as to the authenticity or admissibility of either party's exhibits, the

1  objecting party shall file and serve concurrently with this pre-trial stipulation any motion to

2  exclude evidence with a supporting memorandum of points and authorities. Any response to the

3  motion shall be filed and served two court days prior to the pre-trial conference. All objections to

4  the admission of exhibits shall be resolved at the pre-trial conference. The failure to so object to

5  the admission of exhibits listed on Appendices 1 and 2 may be deemed a waiver of any objection.

6  **VI.**    **WITNESSES TO BE OFFERED BY EACH PARTY**

7      **A.**    **PLAINTIFF**: A list of the only witnesses Plaintiff shall call to testify at trial, a

8  summary of their intended testimony and an estimate of the length of direct and cross-

9  examination is attached to this order as Appendix 3.

10      **B.**    **DEFENDANT**: A list of the only witnesses Defendant shall call to testify at trial,

11  a summary of their intended testimony, and an estimate of the length of direct and cross-

12  examination is attached to this order as Appendix 4.

13  **VII.**    **REBUTTAL TESTIMONY**

14      Plaintiff, who has the burden of establishing each element of its claim for relief, will be

15  the first to introduce evidence to prove the facts necessary to enable Plaintiff to recover. When

16  Plaintiff rests, Defendant may then present evidence to contravene any of Plaintiff's claims or in

17  support of any affirmative defenses which the Defendant has included in this pre-trial stipulation.

18  After the close of Defendant's case, Plaintiff may present rebuttal testimony only to counter

19  evidence previously submitted by Defendant on issues not raised in Plaintiff's original

20  presentation in its case.

21                                 **STIPULATION**

22      The foregoing admissions have been made by the parties, and the parties have specified

23  the foregoing issues of fact and law remaining to be litigated. Therefore, this stipulation shall

24  supersede the pleadings and govern the course of trial in this adversary proceeding, unless

25  modified to prevent manifest injustice.

26  / / /

27  / / /

28  / / /

**IT IS SO STIPULATED.**

Dated:  July 9, 2020

NEWMEYER & DILLION LLP

By: */s/ Amtoj S. Randhawa*

Amtoj S. Randhawa
Attorneys for Plaintiffs
STEPHEN CHEIKES, an individual; and
THE STORYTELLERS GROUP
ENTERPRISES CO., a Canadian
corporation

Dated:  July 9, 2020

PACHULSKI STANG ZIEHL & JONES LLP

By:

Jeffrey P. Nolan
Attorneys for Defendant
SHAMAN BAKSHI

2518.102 / 8847008.1

- 29 -

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Newmeyer Dillion LLP
895 Dove Street, 5th Floor, Newport Beach, CA 92660

A true and correct copy of the foregoing document entitled (specify): _____
PRE-TRIAL STIPULATION FOR CLAIMS FOR RELIEF_____
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date)
_____7/9/20_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:
   Brad D Krasnoff (TR) BDKTrustee@dgdk.com, bkrasnoff@ecf.epiqsystems.com; DanningGill@gmail.com
   Jeffrey P Nolan jnolan@pszjlaw.com
   United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL:**
On (date) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) ____7/9/20_____, I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.
Hon. Vincent P. Zurzolo
Courtroom 1368
Roybal Federal Building
255 E. Temple St., Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 7/9/20 | Audrey Evans | _ACE_ |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California 90067**

A true and correct copy of the foregoing document entitled (*specify*): **PRETRIAL BRIEF OF DEFENDANT SHAMAN BAKSHI**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **November 8, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Brad D Krasnoff (TR)    BDKTrustee@dgdk.com, bkrasnoff@ecf.epiqsystems.com; DanningGill@gmail.com
- Jeffrey P Nolan    jnolan@pszjlaw.com
- Nathan Owens    nathan.owens@ndlf.com; audrey.evans@ndlf.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **November 8, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **November 8, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**PERSONAL DELIVERY**
Honorable Vincent Zurzolo
United States Bankruptcy Court
Central District of California
255 E. Temple Street
Suite 1360/Courtroom 1368
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 8, 2022 | Rolanda Mori | /s/ Rolanda Mori |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

DOCS_LA 345931 v8 05233.004