NEWMEYER & DILLION LLP
J. NATHAN OWENS, CBN 198546
CHRISTOPHER C. STECKBAUER, CBN 314116
895 Dove St., Fifth Floor
Newport Beach, California 92660
(949) 854-7000 / (949) 854-7099 (Fax)
Nathan.Owens@ndlf.com
Chris.Steckbauer@ndlf.com

Attorneys for Plaintiffs
STEPHEN CHEIKES, an individual; and THE STORYTELLERS GROUP ENTERPRISES CO., a Canadian corporation

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

In Re:

SHAMAN BAKSHI,

Debtor.

STEPHEN CHEIKES, an individual; and THE STORYTELLERS GROUP ENTERPRISES CO., a Canadian corporation;

Plaintiffs,

v.

SHAMAN BAKSHI,

Defendant.

CASE NO.: 2:18-BK-14672
AP CASE NO.: 2:18-AP-01235-VZ
JUDGE: Vincent P. Zurzolo

**PLAINTIFFS' TRIAL BRIEF**

DATE: November 15 and 16, 2022
TIME: 10:00 a.m.
DEPT.: Ctrm. 1368
Roybal Federal Building
255 E. Temple Street
Los Angeles, CA 90012

NEWMEYER DILLION

NEWMEYER DILLION

## TABLE OF CONTENTS

**Page**

1. INTRODUCTION. ....................4
2. PLAINTIFF'S COMPLAINT AND THE CENTRAL QUESTION AT ISSUE IN THIS CASE....................5
3. STATEMENT OF FACTS. ....................5
4. UNDER THE CIRCUMSTANCES BEFORE THIS COURT, BAKSHI'S DEBT CANNOT BE DISCHARGED. ....................9
   - A. Bakshi Made Multiple, Material Misrepresentations....................9
   - B. Bakshi Knew His Representations Were False....................10
   - C. Bakshi Intended To Induce Plaintiffs To Enter The Transaction. ....................11
   - D. Plaintiffs Justifiably Relied On Bakshi's Representations. ....................11
   - E. Bakshi's Misrepresentations Proximately Caused Plaintiffs Severe Economic Harm. ....................12
   - F. Plaintiffs Have Suffered More Than $500,000 In Damages....................12
5. CONCLUSION. ....................13

**Page(s)**

**Federal Cases**

*Basic v. Levinson*
485 U.S., 108 S.Ct. .......... 10

*Co hen v. de la Cruz*
523 U.S. 213 (1998) .......... 14

*Field v. Mans*
516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) .......... 12

*In re Arm*
87 F.3d 1046 (9th Cir. 1996) .......... 10

*In re Baljian*
No. ADV 12-90166-CL, 2014 WL 1287127 (Bankr. S.D. Cal. Mar. 26, 2014) ..... 11, 12, 13, 14

*In re Eashai*
87 F.3d .......... 11

*In re Ekrem*
192 B.R. 982 .......... 12

*In re Harmon*
250 F.3d 1240 .......... 11

*In re Kirsh*
973 F.2d 1454 .......... 12

*In re Sabban*
600 F.3d 1219 (9th Cir. 2010) .......... 10

*In re Tallant*
218 B.R. 58 (9th Cir. B.A.P. 1998) .......... 10

*Muegler v. Bening*
413 F.3d 980 (9th Cir.2005) .......... 14

*Smith v. Young (In re Young)*
208 B.R. 189 (Bankr. S.D. Cal. 1997) .......... 10

**Federal Statutes**

11 U.S.C. §523(a)(2)(a) .......... passim

**Federal Rules**

4 (9th Cir .......... 11

**Other Authorities**

Restatement (Second) of Torts § 551 .......... 11

NEWMEYER DILLION

## 1. INTRODUCTION.

Congress enacted the bankruptcy laws to afford debtors a fresh start, but Congress also enacted exceptions to discharge to protect victims of fraud and wrongdoing. The evidence in this case makes clear that Defendant Shaman Bakshi ("Bakshi") is not an unfortunate debtor who faced troubling circumstances or unfortunate hardships. Bakshi is filing bankruptcy solely to extinguish a debt he owes Plaintiffs because of his fraudulent misrepresentations and actions.

Bakshi made multiple, false representations concerning the no-risk nature of a transaction to convince Plaintiffs Stephen Cheikes and The Storytellers Group Enterprises Co. ("Plaintiffs") to place €300,000 into escrow in order for Bakshi himself to make millions of dollars (the "Transaction"). Bakshi's false, fraudulent, and material representations included: (1) making false representations about his specific ongoing financial relationships with several third parties involved in the Transaction; (2) making false representations about the success of his previous business dealings specifically with those third parties in similar transactions; (3) making false representations about the no risk nature of the Transaction; and (4) making false representations about his intention and ability to honor a guarantee. The evidence shows that each and every one of those representations were in fact false, that Bakshi knew each and every one of those representations were false, and that he made those representations with the intent to deceive Plaintiffs into placing €300,000 in escrow. Notwithstanding Bakshi's knowledge that Plaintiffs were relying on his representations of successful financial relationships and that Plaintiffs were unaware that he had no ability to cover the guarantee if the Transaction failed, he allowed, or rather encouraged Plaintiffs to put up a substantial sum of money under false pretenses.

Further, the evidence shows Plaintiffs justifiably relied on Bakshi's false representations and that they suffered substantial damages resulting from their reliance on those representations.

As a result, Plaintiffs not only lost the €300,000 they deposited, but Plaintiffs have incurred hundreds of thousands of dollars in legal fees trying to recover the monies they should never have lost. Bakshi asks this Court to disregard the fact that Plaintiffs would not have lost a single penny but for his fraudulent representations. In fact, Bakshi asks this Court to suspend all

NEWMEYER DILLION

reason and believe that he never had any involvement in the Transaction, that someone impersonated him on the phone and by email, that someone duped a notary public into forging his signature, that an imposter spent years attempting to convince Plaintiffs that Bakshi had the intention to recover and/or reimburse the lost monies, and that he never received service of process in the action filed against him for the underlying fraudulent actions.[1] There is only one explanation for Bakshi's outlandish story – that there is no way to spin the factual evidence in a manner that makes Bakshi's actions anything other than false pretenses, false representations, and fraud.

Therefore, either the Court believes that Bakshi had no involvement in the Transaction, or that he is lying about his involvement to avoid the ramifications of 11 U.S.C. §523(a)(2)(a). The evidence clearly demonstrates the latter and that Bakshi's debt is not dischargeable under the circumstances. This is precisely the outcome Congress intended to curtail by enacting exceptions to the discharge of debt, and the reason why this Court should find that the debt owed to Plaintiffs is nondischargeable pursuant to 11 U.S.C. §523(a)(2)(a).




## 2. PLAINTIFF'S COMPLAINT AND THE CENTRAL QUESTION AT ISSUE IN THIS CASE.

Plaintiff's Adversary Complaint for Nondischargeability of Debt involves one cause of action under 11 U.S.C. §523(a)(2)(a). Fortunately for this Court, Bakshi's story of temporary identity theft makes the issue a simple one with one critical question that the factfinder must answer: was Bakshi the victim of identity theft and therefore completely ignorant of the Transaction? If the answer to this question is "no," then Bakshi's false representations should prevent him from discharging his debt pursuant to 11 U.S.C. §523(a)(2)(a).

## 3. STATEMENT OF FACTS.

In or about October 2010, Plaintiffs were introduced, in person, to Bakshi who began soliciting them to participate in a financing opportunity involving a Standby Letter of Credit ("SBLC"), the Transaction. In an effort to convince Plaintiffs to place monies in escrow to

---

[1] *The Storytellers Group Enterprises Co. et al. v. Shaman Bakshi et al*. (Case No. 30-2013-00637770-CU-BC-CJC)

facilitate the Transaction, Bakshi represented that the Transaction would be structured in such a way that it presented ***no risk*** to Plaintiffs' €300,000.

Between on or about October 27, 2010 and February 23, 2011, Bakshi represented to Plaintiffs, by telephone and by email, that he had previously successfully completed several of these transactions with other investors. Bakshi further represented that the issuance of the SBLC, cash-backed by Sabastian Anthonysamy ("Anthonysamy"), was assured. Bakshi also represented that he had substantial business dealings with Toni Hardstone ("Hardstone"), principal of Commercial Escrow Services, Inc. ("CES"), the escrow company that would hold the escrowed monies until the SBLC was issued, and that his business dealings specifically with Hardstone and CES on similar transactions had been successfully handled without issue.

Between on or about October 27, 2010 and February 23, 2011, Bakshi further represented that he would execute a guarantee guaranteeing Plaintiffs a refund of their monies in the event the Transaction failed.

On or about February 23, 2011, six days before Plaintiff had deposited any monies into escrow, Bakshi e-mailed Plaintiffs his signature on his first personal guarantee entitled “Distribution of Proceeds and Personal Guarantee Agreement.”

On February 24, 2011, Plaintiff and Bakshi exchanged emails and had a phone call regarding the distribution of proceeds on the transaction and Bakshi's personal guarantee of the Transaction. In those emails and the phone call, Bakshi confirmed his personal guarantee of the monies and the no-risk structure of the Transaction and requested a larger share in the proceeds for the personal guarantee.

On or about March 1, 2011, Plaintiffs caused €300,000 to be deposited into an escrow account to finance the Transaction. The monies deposited were to be held in escrow until the terms of the agreement were completed.

On or about March 11, 2011, Bakshi executed a revised agreement and personal guarantee entitled “Agreement to Facilitate Loan Transaction” reflecting the additional negotiations that took place on or about February 24, 2011 (hereafter “Bakshi Guarantee”).

On March 17, 2011, Bakshi executed multiple transactional documents before a notary

NEWMEYER DILLION

public. The notary certified, under the penalty of perjury, that Bakshi's identification was verified, and that Bakshi was the person executing the documents before him. The notary also obtained Bakshi's thumbprint and placed it on the certification pages. Bakshi then sent the notarized documents to Anthonysamy, a principal in the Transaction.

Shortly thereafter, Plaintiffs learned that the Transaction had failed and the €300,000 they deposited had been released. Upon learning this information, Plaintiffs demanded the return of their €300,000 from Anthonysamy. Understanding that he was personally liable for the full €300,000 (now that the Transaction had failed), Bakshi also sent Anthonysamy a letter demanding the return of the €300,000.

After Anthonysamy failed to return any portion of the €300,000, Plaintiffs sought repayment from Bakshi pursuant to his individual personal and corporate guarantees.

After it became evident that Bakshi did not have any intent to honor the guarantees, or the financial wherewithal to do so, Plaintiffs were left with no choice but to initiate legal proceedings.

On March 15, 2013, Plaintiffs filed a complaint against Bakshi, Richard Wlodarczyk ("Wlodarczyk"), another individual involved in the transaction, and their closely-held limited liability companies for breach of contract, conversion, fraud, and negligence in the Orange County Superior Court in the case styled *The Storytellers Group Enterprises Co. et al. v. Shaman Bakshi et al*. (Case No. 30-2013-00637770-CU-BC-CJC) (the "State Court Action"). ECF 61-1.

Over the next several months, Plaintiffs worked with Bakshi and Wlodarczyk to determine the most expeditious way for Bakshi and Wlodarczyk to repay Plaintiffs. Indeed, on November 25, 2013, Wlodarczyk e-mailed Plaintiffs' counsel, Mr. Owens, advising him that he had been in contact with Bakshi, was working with Defendant to gather the funds necessary to effectuate other transactions whose proceeds would be used to repay Plaintiffs, and would be speaking with Bakshi to discuss the progress that has been made.

For the next several years, Plaintiffs attempted to locate Bakshi to determine next steps. After it became evident that Bakshi was evading Plaintiffs and had no intention of amicably resolving the dispute, Plaintiffs filed a Request for Entry of Default Court Judgment against Bakshi and his limited liability company, Fade to Black Entertainment, LLC in the amount of

NEWMEYER DILLION

$567,167.00. ECF 61-2.

On January 30, 2015, judgment was entered in favor of Plaintiffs and against Bakshi and Fade to Black Entertainment, LLC in the amount of $567,167.00 in the State Court Action. ECF 61-3.

On May 11, 2017, more than two years after judgment had been entered, Bakshi filed a motion to set aside the default and dismiss the State Court Action by alleging that he was never personally served with Plaintiffs' complaint.

On October 10, 2017, the court held an evidentiary hearing on Bakshi's motion. After considering the voluminous amount of e-mails and evidence confirming that Bakshi was aware of the State Court Action and the judgment entered against him, and after considering the testimony of Bakshi, Bakshi's colleague, Mr. Kenneth Yufe, and the process server, the court denied Bakshi's motion and specifically stated that:

> the Court [was] not convinced that the story told by these two close friends and business associates that Bakshi was in San Diego on April 13 at 6:30 p.m. is sufficient to outweigh Davila's testimony. Indeed, if Bakshi actually was in San Diego at that time, then (1) one would expect that he quickly (if not immediately) would have informed Plaintiff of that fact when he first learned of the default judgment on February 17, 2015 (Exh 2), and (2) he would not have waited until May 2017 (nearly 27 months later) to bring the instant motion.

Bakshi failed to persuade the state court judge to set aside Plaintiffs' judgment, so Bakshi now attempts to persuade this Court that he was never a party to the Transaction. This assertion, similar to Bakshi's assertion that he was never personally served in the State Court Action, also flies in the face of the e-mails, evidence, and sworn testimony of multiple parties—including Wlodarczyk—all evidencing that Bakshi was an active, principal participant in the Transaction who knowingly made false representations supporting the assertion that the Transaction posed no risk to Plaintiffs' monies and executed the Bakshi Guarantee. The evidence also makes clear that to reap the financial benefits anticipated from the Transaction, Bakshi needed Plaintiffs to place the €300,000 in escrow. These facts underscore why Bakshi was willing to sign what needed to be signed, say what needed to be said, and do what needed to be done to ensure Plaintiffs place the €300,000 necessary to fund the Transaction into escrow.

**4. <u>UNDER THE CIRCUMSTANCES BEFORE THIS COURT, BAKSHI'S DEBT CANNOT BE DISCHARGED.</u>**

The Ninth Circuit has held that "the indirect benefit to the debtor from a fraud in which he participates is sufficient to prevent the debtor from receiving the benefits that bankruptcy law accords the honest person." *In re Arm*, 87 F.3d 1046, 1049 (9th Cir. 1996)(citations omitted). The Ninth Circuit has also held that a scheme to defraud under 523(a)(2)(A) includes the failure to disclose material facts that the debtor has a duty to disclose. *In re Tallant*, 218 B.R. 58 (9th Cir. B.A.P. 1998).

The standard for nondischargeability under 11 U.S.C. §523(a)(2)(A) requires the creditor to demonstrate the following five elements:

> (1) the debtor made…representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; [and] (5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made.

*In re Sabban*, 600 F.3d 1219, 1222 (9th Cir. 2010) (citations omitted).

**A. <u>Bakshi Made Multiple, Material Misrepresentations.</u>**

A fraudulent misrepresentation may be express or implied. An implied misrepresentation arises from "conduct intended to create and foster a false impression." *Smith v. Young* (*In re Young*), 208 B.R. 189, 199 (Bankr. S.D. Cal. 1997). "A misrepresentation is material if a reasonable investor would consider the information to be important in his decision to invest." *Id.* at 993–94 (*citing Basic v. Levinson*, 485 U.S. at 224, 108 S.Ct. at 979).

Bakshi made several representations to Plaintiffs that were material including, most importantly, that the Transaction would be structured in such a way that it posed no risk to Plaintiffs' monies. **In support of that material misrepresentation, Bakshi further represented that: (i) he knew the transaction would be successful because he had already successfully completed several, similar transactions; (ii) he knew all of the parties involved in the transaction and had successfully completed similar, transactions specifically with them; and**

/ / /

**(iii) he would, and could, guarantee the €300,000 that Plaintiffs would have to invest to make the transaction work.**

**B. <u>Bakshi Knew His Representations Were False.</u>**

The Ninth Circuit has held that "[a] debtor's failure to disclose material facts constitutes a fraudulent omission under § 523(a)(2)(A) if the debtor was under a duty to disclose and the debtor's omission was motivated by an intent to deceive." *In re Harmon*, 250 F.3d 1240, 1246 n. 4 (9th Cir.2001) (citing *In re Eashai*, 87 F.3d at 1089–90).

This Court has previously held that a party to a business transaction has a duty to disclose:

> (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and ... (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

*In re Baljian*, No. ADV 12-90166-CL, 2014 WL 1287127, at *7 (Bankr. S.D. Cal. Mar. 26, 2014) ("*Baljian*") (*quoting* Restatement (Second) of Torts § 551.4).

Bakshi knew that his assurance that the Transaction presented no risk to Plaintiffs' monies was the primary reason Plaintiffs agreed to place the place €300,000 into escrow. Bakshi also knew that Plaintiffs were largely relying on his ability to perform under the guarantee, his substantial specific business relationships with other parties in the Transaction, and his alleged success in similar transactions with those individuals in the past. Notwithstanding, Bakshi misrepresented his business relationships and successful transaction history and concealed the fact that he did not have the financial ability to repay the €300,000 he was guaranteeing.

Based on the conversations between Plaintiffs and Bakshi surrounding the Transaction, Bakshi knew that his alleged connections and success specifically with third parties involved in the transaction and his performance on the guarantees were critical to Plaintiffs. Thus, Bakshi had a duty to disclose his inability to perform on the guarantee because it was "necessary to prevent [Bakshi's] [guarantee] from being misleading," which was a fact "basic to the transaction because [Bakshi] knew that Plaintiffs were about to enter into [the transaction] under a mistake as to [it]." See *In re Baljian*, 2014 WL 1287127, at *7. Notwithstanding his clear obligation to disclose this

NEWMEYER DILLION

material fact, in addition to his refusal to disclose the true nature of his business relationships and lack of experience with those involved, Bakshi unilaterally decided that this was information Plaintiffs did not need to consider.

Bakshi knew that Plaintiffs would not have entered into the transaction if he did assure them that it presented no risk. To support his no-risk representation, Bakshi guaranteed the return of their €300,000, but chose to keep information about his financial inability to cover the €300,000 from Plaintiffs. Bakshi also knew that Plaintiffs were interested in his specific and substantial business relationships with third parties in the Transaction, so he fabricated his connections and success in the past. Therefore, it follows that Bakshi had a duty to disclose his lack of knowledge concerning certain third parties and his financial inability to perform under the guarantees at the time they were made, and Bakshi's concealment of this information was fraudulent.

**C. Bakshi Intended to Induce Plaintiffs to Enter the Transaction.**

But for Bakshi's representations, Plaintiffs would not have put money up to close the Transaction. Bakshi knew this from the circumstances surrounding this initial meeting and the follow up phone calls and emails. Bakshi was in financial trouble, facing divorce and prospect of losing his family. The Transaction was Bakshi's way out. There is no other reason for Bakshi have made so many misrepresentations to Plaintiffs.

**D. Plaintiffs Justifiably Relied on Bakshi's Representations.**

The Supreme Court has held that a creditor's reliance on a debtor's misrepresentation or omission need be only justifiable, not reasonable, to except a debt from discharge under § 523(a)(2)(A). *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 439, 133 L.Ed.2d 351 (1995). "The inquiry is whether the creditor justifiably relied in light of the subjective effect of the circumstances." *In re Ekrem*, 192 B.R. 982 at 994 (citing *In re Kirsh*, 973 F.2d 1454 at1460). "The fact that an investigation would have revealed the falsity of the misrepresentation will not alone bar his recovery," *In re Kirsh*, 973 F.2d 1454, 1459 (9th Cir. 1992) (citations omitted). Instead, recovery will only be barred if "the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable" *Id.* at 1460.

NEWMEYER DILLION

The Court dealt with a similar scenario in *Baljian* in which it held that "[debtor] must have known that had they presented the whole truth about their circumstances…, the [plaintiff creditors] would likely not have consummated the transaction." *In Re Baljian*, No. ADV 12-90166-CL, 2014 WL 1287127, at *9. We have the exact same scenario here since Plaintiffs made absolutely clear that they would not even consider the transaction unless Bakshi could support his assurances of no risk that the monies could be lost.

Plaintiffs had a prior understanding of similar transactions through their relationship with Garry Jaimeson. Plaintiffs looked into Mr. Bakshi's background, which did in fact include an impressive resume in finance. Mr. Bakshi vouched for the other parties to the Transaction. Plaintiffs' reliance was not on a misrepresentation of how much money could be made. Indeed, Plaintiffs understood that the Transaction may not make the parties any money. Rather, Plaintiffs relied on the false representation that there was no risk of losing any money, regardless of the potential windfall from the Transaction.

As this Court previously held, in cases involving fraudulent omissions, "[a]ll that is necessary is that the facts withheld be material in the sense that a reasonable [person] might have considered them important in the making of this decision. This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact. *In re Baljian*, No. ADV 12-90166-CL, 2014 WL 1287127, at *9 (citations omitted).

**E. <u>Bakshi's Misrepresentations Proximately Caused Plaintiffs Severe Economic Harm.</u>**

Bakshi's representations induced Plaintiffs to invest €300,000 in the Transaction. But for Bakshi's representations as to the no-risk nature of the Transaction, supported by his alleged substantial business dealings with Wlodarcyzk, Hardstone, and Anthonysamy, his alleged success with those individuals in similar transactions previously, and his guarantees, Plaintiffs would not have placed the monies into escrow.

**F. <u>Plaintiffs Have Suffered More Than $500,000 in Damages.</u>**

"The damages in a nondischargeability action are not limited to the amount of money Debtors obtained by fraud. They extend to the creditor's loss resulting from the fraud, even if this

NEWMEYER DILLION



exceeds the value Debtors received. And this may include attorney's fees, costs, and treble damages." *In re Baljian*, No. ADV 12-90166-CL, 2014 WL 1287127, at *11 (citing *Co hen v. de la Cruz,* 523 U.S. 213, 214–18 (1998); *Muegler v. Bening,* 413 F.3d 980, 983 (9th Cir.2005)). Bakshi's material misrepresentations and omissions caused Plaintiffs to lose the entire €300,000 they invested. Moreover, Plaintiffs have incurred hundreds of thousands of dollars in legal fees and costs attempting to recover their monies from Bakshi from 2010 to the present. Therefore, Bakshi is liable to Plaintiffs for the full €300,000, with interest, and Plaintiffs' attorneys' fees. The Court should find that this amount is nondischargeable.

**5. <u>CONCLUSION.</u>**

The evidence in this case will prove Bakshi made false representations about the no-risk nature of the deal, that he knew the falsity of his statements, that he made his false representations with the intent to deceive Plaintiffs into entering the Transaction, that Plaintiffs justifiably relied on his representations, and that the Plaintiffs suffered substantial damages as a result of that reliance. Thus, Bakshi's debt is not dischargeable under 11 U.S.C. §523(a)(2)(a).

Dated: November 8, 2022

NEWMEYER & DILLION LLP

By: /s/ Nathan Owens

J. Nathan Owens
Christopher C. Steckbauer
Attorneys for Plaintiffs
STEPHEN CHEIKES, an individual; and THE STORYTELLERS GROUP ENTERPRISES CO., a Canadian corporation

Main Document Page 14 of 14

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Newmeyer Dillion LLP
895 Dove Street, Second Floor, Newport Beach, CA 92660

A true and correct copy of the foregoing document entitled (*specify*): PLAINTIFFS' TRIAL BRIEF

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 11/08/2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Brad D. Krasnoff (TR) BDKTrustee@DanningGill.com; bkrasnoff@ecf.axosfs.com; DanningGill@gmail.com
Jeffrey P. Nolan jnolan@pszjlaw.com
United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _______________, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 11/09/2022, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Honorable Vincent Zurzolo, United States Bankruptcy Court, Central District of California, 255 E. Temple Street, Suite 1360 / Courtroom 1368, Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 11/08/2022 | Rosa Lopez | /s/ Rosa Lopez |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**